WORDEN v. CITY OF DETROIT.

1. PLEADING—AMENDMENTS—DISCRETION OF COURT.

In a suit to enjoin the construction of street railway tracks by a city, it was clearly within the discretion of the trial court to permit defendants to amend their answer to correspond to plaintiffs' proof.

2. MUNICIPAL CORPORATIONS—STREET RAILWAYS—DETROIT CHARTER —POWERS OF COMMON COUNCIL—ULTRA VIRES.

The action of the Detroit common council in ordering the removal of certain street car tracks, and in subsequently rescinding said order and directing the construction of a new line on the same street, was not *ultra vires* but clearly within its powers under its charter (title 4, chap. 13, § 6), providing for the acquisition of a street railway system by the city and for extensions and new lines to be first approved by the common council.

3. SAME—STREET RAILWAYS—TITLE IN FEE NOT NECESSARY.

The fact that the city had not acquired the fee title to a portion of the street railway system which was laid upon a private right of way, of which it was in possession under its contract of purchase, did not prevent it from using such property for the construction of a new car line.

4. SAME—STREET RAILWAYS—DETROIT CHARTER—IMPROVEMENTS— ESTIMATES NOT REQUIRED TO ITEMIZE IN DETAIL.

Under said charter (title 4, chap. 13, § 20) relative to the acquisition by the city of a street railway system, which provided that estimates of amount required for expenditures for the ensuing fiscal year should be transmitted to the city controller, an item in the estimate giving the amount required, and the streets on which it was to be expended, was sufficient, although it was not itemized in detail.

5. SAME—APPROVAL OF ESTIMATES NOT A JUDICIAL QUESTION.

Whether, in the approval of estimates for public improvements, the common council and mayor of a city exercise

[1]Pleading, 31 Cyc. pp. 448, 450; [2]Municipal Corporations, 43 C. J. § 579; [3]Id., 43 C. J. § 579; [4]Id., 28 Cyc. p. 1563; [5]Id., 28 Cyc. p. 1563 (Anno).

their judgment without a proper or complete knowledge
of conditions is not a judicial question.

6. SAME—STREET RAILWAYS—DETROIT CHARTER—PRIVATE PARTIES
NOT ENTITLED TO ENJOIN LAWFUL EXPENDITURES.
    Under said charter (title 4, chap. 13, § 6) relative to the
    acquisition of a street railway system by the city and re-
    quiring that extensions and new lines be first approved
    by the common council, private individuals residing upon
    a street from which the tracks had been removed may not
    enjoin the laying of new tracks by the city and the restora-
    tion of service thereon; no charter provision having been
    violated, and the expense therefor being paid from the
    income of the system.

7. SAME—INJUNCTION—BURDEN OF PROOF.
    In a suit to enjoin the expenditure of public funds, plain-
    tiffs must establish that the threatened expenditure is
    unlawful.

8. EMINENT DOMAIN — STREET RAILWAYS NOT AN ADDITIONAL
SERVITUDE ON STREET.
    The maintenance and operation of a street railway upon
    a street does not impose such a new burden and servitude
    as to authorize the owner of abutting land to complain.

Appeal from Wayne; Brennan (Vincent M.), J.
Submitted October 28, 1927. (Docket No. 140.)
Decided December 1, 1927.

Bill by John R. Worden and others against the city
of Detroit and others to enjoin the construction of a
street railway. From a decree dismissing the bill,
plaintiffs appeal. Affirmed.

*Ralph E. Routier,* for plaintiffs.

*Charles P. O'Neil,* Corporation Counsel, and *Walter
E. Vashak* and *John H. Witherspoon,* Assistants Cor-
poration Counsel, for defendants.

FELLOWS, J.     For upwards of ten years the Detroit
United Railway Company operated a line which in

[6]Municipal Corporations, 28 Cyc. p. 1738 (Anno); [7]Id., 28 Cyc.
p. 1748; [8]Eminent Domain, 20 C. J. § 171.

part traversed a portion of Webb avenue. The original subdivider had platted certain lots called outlots and the line was in part, at least, built on them. The construction was not modern and some complaint is made that travelers on the street could not cross these tracks as conveniently as they desired. This line with other property was taken over by the city upon the adoption of the municipal ownership plan and it continued to operate the line for some four years. Plaintiffs, residing on Webb avenue, desired the tracks taken up and petitioned the common council to have this done. The petition was referred to the board of street railway commissioners. At that time Col. H. U. Wallace was general manager but not a member of the commission. He was familiar with the situation, being a resident of the locality. He sent a communication to the common council recommending that the petition be granted, and outlined the routes which in his judgment would take care of the traffic. A hearing was had and the common council ordered the tracks removed, and they were removed. Shortly thereafter petitions to the common council bearing around 7,000 signatures were filed asking that the service be restored. Another public hearing was had and the common council unanimously rescinded its former action and by another resolution directed and authorized the department of street railways to restore the service. Thereupon this bill was filed to restrain such action.

A preliminary question should be first considered. Defendants in their answer had stated that the communication to the common council was from the street railway commission. Plaintiffs' counsel read the communication into the record as part of their case. It was signed by Col. Wallace. The testimony showed that the commission itself had never taken any official action on the plaintiffs' petition, and defendants were permitted to amend their answer to correspond to

plaintiffs' proofs by striking out the words "street railway commission" and substituting in accordance with the facts the words, "Col. H. U. Wallace" (the general manager of the Detroit Street Railway). This but permitted the pleading to correspond to plaintiffs' proof and was clearly within the discretion of the trial judge.

The bill contains many charges of bad faith against the officials of the city, but there is not a line in the whole record to sustain such charges.    Upon this record the officers of defendant city and all of them having to deal with the situation here have acted in the utmost of good faith in the discharge of their duties.    Plaintiffs' testimony establishes that there were some inconveniences suffered by the maintenance of the old tracks.    They were constructed many years ago; the street was not paved between the tracks and the tracks had probably outlived their usefulness.    But they have been removed; there is no line of street railway there now.    Unless restrained by injunction, the proper officers will, pursuant to the direction of the common council, build a new line of street railway on this street.    It will be of modern construction, laid in concrete, paved between the tracks, and the inconveniences, other than those of having a street railway operating on the street, will be removed.    In fact, if defendants are permitted to proceed, many of the objections appearing in the testimony will be done away with.    The street is 72 feet wide from curb to curb and there is ample room for both street car and vehicular traffic.

It is insisted on behalf of plaintiffs that the action of the common council in ordering the new construction was in excess of its authority; that the control of the system rested exclusively in the commission, had been exercised by it, and, therefore, the action of the common council was *ultra vires*.    This contention cannot be supported as matter of fact or as matter

of law.    No official action was ever taken by the commission ordering the old tracks removed upon the petition originally filed by plaintiffs.    That petition was addressed to and filed with the common council and referred by the city clerk to the commission. Col. Wallace, general manager, an employee of the commission and a resident of the neighborhood, forwarded to the common council his recommendation. The common council ordered the tracks taken up and the service discontinued.    This was done.    The old worn-out tracks which had seen better days were taken up; there were no street car tracks or service on the street.    Some 7,000 petitioners then appealed to the common council to establish a service to meet their needs, a service they had long been accustomed to. A public hearing was had and plaintiffs were heard. The common council after such hearing not only rescinded its former action, which it had a perfect right to do, although as a practical proposition the rescinding of the former action was not very effective, as the tracks had already been taken up, but it also directed the construction of a new line, one not then in existence.    This was not beyond its power but was clearly within it.    Section 6, chap. 13, tit. 4, of the charter of the city of Detroit, the chapter being entitled: · "Street Railway Commission," after directing the acquisition of a street railway system, provides:

"Said board shall, whenever it deems it necessary, build extensions and new lines.    Such extensions and new lines shall be first approved by the common council."

It is further insisted that a portion of the new track will be laid on private right of ways, the title in fee to which had not been acquired by the city.    But the record discloses that the city has purchased from the Detroit United Railway its property, including this private right of way; that it holds the same under

such contract of purchase, and there is no claim that it has defaulted in any of its payments.    We perceive no reason why we should say in a suit by a private individual that the city may not lawfully use such property so held by it for the purposes for which it was acquired.

Section 20, chap. 13, tit. 4, of the charter of the city of Detroit, reads as follows:

"Section 20. On or before the fifteenth day of January of each year, the board shall transmit to the city controller its estimate in duplicate of the amount of money required for its purposes for the ensuing fiscal year.    The common council may adopt ordinances not in conflict herewith to carry out the purposes and provisions of this chapter."

It is insisted that this provision of the charter has not been complied with.    But we find in the record an exhibit bearing date January 13, 1927, entitled "Ways and Structures Division, Estimated Expenditures against Capital Account January to December, 1927," and under the head "C Supplemental—If money can be Provided," among the many items the following:

"Webb avenue, Hamilton to Woodrow Wilson— $53,000."

While the amount is not itemized in detail, we do not think this fact is of importance.    In *Van Baalen* v. *City of Detroit*, 217 Mich. 125, it was said:

"It was formerly the custom, in making up the annual appropriations, to specify in detail the use to which the money was to be put.    According to the testimony, the investigation and examination of the different streets submitted for repairing, became too laborious for the mayor and the mayor requested that hereafter no such detailed list be given to him, and this plan was adopted in 1920.    We see no legal objection to this plan.    The common council and the mayor, in approving the contracts and recommendations of the department of public works for the re-

paving or resurfacing of the different streets as they are submitted by that department, are called upon to exercise their judgment as to each expenditure. Whether these officials exercise their judgment. with or without a proper or complete knowledge of the conditions is not a judicial question."

Many cases are cited in which taxpayers have been permitted to come into a court of equity to restrain the enforcement of an unlawful tax.    But such cases are hardly applicable here.    No tax or assessment either general or special will be levied to pay for the construction of this line.    All the cost will be paid for out of the income of the system.    But even in taxpayers' cases it is incumbent on the plaintiffs to establish the threatened levy of an unlawful tax.    So if we treat the bill as one seeking to restrain the unlawful expenditures of public funds, it is still incumbent on the plaintiffs to establish that the threatened expenditure is unlawful.    This they have failed to do.    Our attention has been called to no mandatory provision of the city charter which has been violated and we have found none.    Since Mr. Justice COOLEY wrote the opinion in *Grand Rapids, etc., R. Co.* v. *Heisel,* 38 Mich. 62 (31 Am. Rep. 306), it has been the settled law of this State that the maintenance and operation of a street railway upon a street does not impose such a new burden and servitude as to authorize the owner of abutting land to complain. While what was said by Mr. Justice COOLEY on that subject was *dictum,* and had been so regarded by this court, it has uniformly been followed in cases too numerous to cite.

The decree dismissing plaintiffs' bill will be affirmed, with costs of this court.

SHARPE, C. J., and BIRD, NORTH, FLANNIGAN, WIEST, CLARK, and McDONALD, JJ., concurred.