ALTMAN v CITY OF LANSING

Docket No. 57874. Submitted November 5, 1981, at Lansing.—Decided
April 22, 1982. Leave to appeal applied for.

Joel E. Altman and Ronald Hatcher brought in Ingham Circuit
Court a taxpayer's suit against the City of Lansing, EJS Hous-
ing Partnership and various other persons, partnerships, corpo-
rations and agencies involved in the development and construc-
tion of a housing development in Lansing commonly known as
Capitol Commons. Plaintiffs, unsuccessful bidders on the·proj-
ect, basically claimed that the selection of EJS as the developer
of the Capitol Commons project was illegal and improvident
and that certain financial transactions agreed to by various
defendants were illegal and a waste of the taxpayer's money.
Plaintiffs filed a notice of *lis pendens*. Defendant EJS filed a
motion to quash the notice of *lis pendens* and defendant city
moved for accelerated or summary judgment on the basis that
plaintiffs lacked standing to pursue a taxpayer's suit and that
plaintiffs' suit was not timely brought. During the pendency of
these defense motions, plaintiffs filed an action in their individ-
ual capacities which contained the same allegations made in
the taxpayer's action. A hearing was held on the motion to
quash the *lis pendens* and Robert Holmes Bell, J., quashed the
notice of *lis pendens.* Thereafter, plaintiffs' claims in the consol-
idated actions were dismissed by Judge Bell on the grounds of
laches and lack of standing to sue. Plaintiffs appeal. *Held:*

1. The trial court properly held that plaintiffs' taxpayer's suit
should be dismissed on the basis of lack of standing to sue.
Since the tax funds in question were from a Federal Urban
Development Action Grant and there was no allegation that
such funds could be used for the city's general budget or that
the city would save money if the EJS contract were cancelled,

REFERENCES FOR POINTS IN HEADNOTES
[1] 74 Am Jur 2d, Taxpayers' Actions §§ 2, 57.
[2-6] 74 Am Jur 2d, Taxpayers' Actions §§ 3, 4.
[4] 74 Am Jur 2d, Taxpayers' Actions §§ 16, 17.
[5] 74 Am Jur 2d, Taxpayers' Actions § 14.
[6] 74 Am Jur 2d, Taxpayers' Actions § 10.
[7] 51 Am Jur 2d, Lis Pendens § 37.

plaintiffs failed to plead facts necessary to maintain a taxpayer's suit. Further, plaintiffs failed to plead any unlawful or fraudulent act by the city or any of its employees.

2. The trial court properly cancelled the notice of *lis pendens* on the equitable ground that the benefit to plaintiffs was too minimal in comparison to the harm that defendants would suffer if the notice of *lis pendens* were not immediately quashed.

3. The trial court properly held that both the taxpayer's action and the action of the individuals were barred by the doctrine of laches.

Affirmed.

1. ACTIONS — TAXPAYER'S SUIT — PLEADINGS.

A plaintiff in a taxpayer's suit must allege that: (1) he is a taxpayer of the defendant governmental unit; (2) taxes will be increased as a result of the challenged expenditure, that is, that the money to be used for the challenged expenditure would otherwise be available for the general purposes of the governmental unit or, if the governmental unit expects a return on the expenditure, that the return will be unprofitable; and (3) the challenged expenditure is in fact an unlawful one.

2. ACTIONS — TAXPAYER'S SUIT — STANDING.

Standing to maintain a taxpayer's suit is missing where the plaintiff alleges that the funds expended by the defendant city were from a Federal Urban Development Action Grant and there is no allegation that such federal funds could be used for general expenditures or for obligations that are paid out of the city's general tax revenues or that the city would save money if the contract giving rise to the expenditure were cancelled.

3. ACTIONS — TAXPAYER'S SUIT — STANDING.

An allegation in a taxpayer's suit against a city relative to an expenditure of funds supplied by the federal government that federal officials engaged in improper activities is not sufficient to satisfy the requirement that the city engaged in an unlawful or fraudulent activity and thereby established the plaintiff's standing to bring a taxpayer's suit.

4. ACTIONS — TAXPAYER'S SUIT — STANDING.

Expenditures occurring as a result of participation in contract negotiations by members of a city's staff are not sufficient to provide standing for a taxpayer's suit in the absence of a showing that the contract was unlawful or that the activities of the staff members were in violation of law.

5. ACTIONS — TAXPAYER'S SUIT.

A bald allegation that tax monies are being expended is too general and conclusory to serve as a springboard for the maintenance of a taxpayer's suit since such allegations would be equally applicable to practically every action taken by a unit of government and would throw open the doors to unlimited, unrestricted citizen's lawsuits.

6. ACTIONS — TAXPAYER'S SUIT — STANDING.

Standing to maintain a taxpayer's suit cannot be grounded on decisions of a governmental unit that are merely unwise, rather, standing to sue must be based on unlawful or fraudulent activity by the governmental unit.

7. LIS PENDENS — CANCELLATION OF LIS PENDENS.

A trial court may cancel a notice of *lis pendens* on equitable principles where the benefit that the plaintiff would receive under the notice of *lis pendens* is too minimal in comparison with the harm that the defendant would suffer.

*Lester N. Turner, P.C.,* for plaintiffs.

*Stephen R. Sawyer,* City Attorney, and *Chris Bergstrom,* Assistant City Attorney, for the City of Lansing.

*Reid, Reid & Mackay, P.C.* (by *Joseph D. Reid, Patrick R. Hogan* and *Deborah L. Drescher),* for EJS Housing Partnership.

*Varnum, Riddering, Wierengo & Christenson* (by *Nyal D. Deems),* for Hartwell Mortgage Corporation.

*Fraser, Trebilcock, Davis & Foster, P.C.* (by *Douglas J. Austin),* for Building in Lansing's Development.

*Farhat, Burns, Story & Stafford, P.C.,* for intervening defendants.

Before: Bronson, P.J., and T. M. Burns and J. T. Corden,* JJ.

T. M. Burns, J. Plaintiffs appeal as of right a May 15, 1981, lower court order granting defendants' motions for summary and accelerated judgment. In its opinion of the same date, the lower court held that plaintiffs did not have standing to maintain their taxpayers' suit and that their claims for equitable relief were barred by the doctrine of laches. Plaintiffs also appeal the lower court's cancellation of their notice of *lis pendens.*

According to plaintiffs' April 22, 1981, complaint, defendant EJS Housing Partnership (hereinafter EJS) was selected by the defendant City of Lansing as the developer for a building project in Lansing, commonly referred to as Capitol Commons. The Capitol Commons development area is a 23-acre site. The defendant city and defendant Building in Lansing's Development, a Michigan nonprofit housing development corporation, purchased land for the site with funds received under the Federal Model Cities Program and the Federal Community Development Block Grants Program. In March, 1979, the city invited developers to submit proposals for construction of housing and neighborhood commercial buildings on Capitol Commons' site.

The invitation for proposals contained information regarding the submission, review and selection process the city planned to undertake. Selection criteria were set forth and formal submission requirements for both preliminary and final proposals were detailed.

Response to the city's invitation for proposals consisted of seven preliminary proposals from

* Circuit judge, sitting on the Court of Appeals by assignment.

which the city selected four development teams to submit final proposals. On or about July 31, 1979, the four final proposals were submitted to the city and on October 29, 1979, the city council formally named defendant EJS as the developer of the Capitol Commons project. The city and EJS signed a "Letter of Agreement" on November 5, 1979, which incorporated certain negotiation procedures that were to lead to an eventual contract. A formal contract was signed by the city and EJS on October 15, 1980.

In their April 23, 1981, complaint, plaintiffs charged defendants with numerous illegal acts and improprieties. It is unnecessary to detail these charges other than to say that plaintiffs complained that the selection of EJS as developer of the Capitol Commons project was illegal and improvident and that certain financial transactions agreed to by various defendants were illegal and a waste of taxpayers' money. Plaintiffs sought an injunction to prevent EJS from acting as developer of the Capitol Commons project. On April 23, 1981, plaintiffs filed a notice of *lis pendens.*

Counsel for defendant EJS filed a motion to quash the notice of *lis pendens* on April 28, 1981. This motion was premised on the arguments that plaintiffs' action was barred by laches, that plaintiffs lacked good faith, and that plaintiffs used the wrong procedure. On the following day, April 29, 1981, the defendant city moved for accelerated and/or summary judgment for the reason that plaintiffs lacked standing to pursue the instant action, and on April 30, 1981, the city moved for accelerated judgment on the ground that because plaintiffs' suit was not timely brought, the circuit court should exercise its equitable jurisdiction and refuse to entertain it.

Knowing of the need for a prompt ruling on the motion of EJS, on account of the delicate financing scheme work surrounding the Capitol Commons project, the trial judge quashed the notice of *lis pendens* at the conclusion of a hearing held on May 1, 1981. Soon thereafter, on May 5, 1981, a motion for partial summary judgment on plaintiffs' demand that AFG Associates be named as an "alternate developer" of the Capitol Commons project was filed by defendant EJS. EJS argued that no alternate developer had been named by the city and, therefore, plaintiffs' claim was meritless.

Realizing that their taxpayer suit might be dismissed on the ground asserted in the April 29, 1981, motion of the city, a second suit was filed by plaintiffs in their individual capacities and on behalf of AFG Associates on May 7, 1981. The complaint in that action, which is referred to as the "alternate developer's suit", contained the same factual allegations that were made by plaintiffs in the taxpayers' suit. On May 28, 1981, the alternate developer's suit was consolidated with the taxpayer's action in accordance with a ruling from the bench by the trial judge at a May 11, 1981, proceeding.

Hearings on defendants' motion for accelerated and/or summary judgment were held by the trial court on May 7 and 11, 1981. Following them, the trial judge on May 15, 1981, issued his opinion and order dismissing plaintiffs' claims on the grounds of laches and lack of standing. Plaintiffs now appeal and we affirm.

Overshadowing in importance the other issues that plaintiffs raise in this appeal is the question of whether the trial judge erred in ruling that plaintiffs lacked standing to prosecute this action

as taxpayers. To maintain a municipal taxpayer's suit, a plaintiff must have suffered the type of injury described by this Court in *Kaminskas v Detroit*, 68 Mich App 499, 501-502; 243 NW2d 25 (1976):

"A municipal taxpayer's suit does not arise out of any specific statutory or court rule grant of standing to sue, but is a judicially sanctioned action whereby municipal taxpayers are allowed to challenge unlawful municipal acts that injure the plaintiffs as taxpayers. *Menendez v Detroit*, 337 Mich 476, 482; 60 NW2d 319 (1953). *Menendez* requires that the plaintiff allege a particular kind of injury:

" '[I]t is clearly recognized that prerequisite to a taxpayer's right to maintain a suit of this character against a unit of government is the threat that he will sustain substantial injury or suffer loss or damage as a taxpayer, through increased taxation and the consequences thereof. This is uniformly true of all the Michigan cases considering this subject.'

"While there is some variance in Michigan case law concerning the character or quantum of taxpayer's loss that is required in the pleadings, all cases we have surveyed require, as a minimum, a clear statement of present or prospective damages to taxpayers. The present complaint gave the trial court no indication of how the plaintiffs, as taxpayers, would be adversely affected by the defendants' policies of hiring provisional employees instead of civil service employees. The mere conclusion of 'harm and detriment to the taxpayer', without a description of the harm, is insufficient.

"As was stated in *Andrews v South Haven*, 187 Mich 294, 304; 153 NW 827 (1915):

" 'The bill does not show that complainant has sustained or will suffer any loss or damage as a taxpayer by reason of what is charged. No increase in taxation * * * is shown. * * * To entitle him to equitable relief as a taxpayer, present or prospective damages must be shown. *Baker v Grand Rapids*, 142 Mich 687; 106 NW 208 [1906].' " (Footnote omitted.)

Given that it seems obvious, the *Kaminskas* Court probably did not find it necessary to note the most basic requirement for standing to bring a taxpayer's suit: the plaintiff must allege that he is a taxpayer of the defendant governmental entity. Plaintiffs have fulfilled this requirement.

A second requirement is that the plaintiff must allege exposure to taxation on account of the challenged expenditure of tax funds. While a plaintiff need not claim that taxes will be raised as a result of the purportedly improper expenditure, he must allege and prove that the money to be used for the expenditure would otherwise be available for the general purposes of the governmental entity. *McManus v Petoskey,* 164 Mich 390, 394; 129 NW 681 (1911). Where it appears that a municipality will receive a return on an expenditure, the plaintiff also must show the return to be unprofitable. *Andrews v South Haven, supra.* Finally, a plaintiff must allege that the challenged expenditure is in fact an unlawful one. *Worden v Detroit,* 241 Mich 139, 145; 216 NW 461 (1927).

Nothing in plaintiffs' complaint supports their contention that they have standing to challenge the city's use of a $935,000 Urban Development Action Grant. We note that plaintiffs' complaint recognizes that these are federal funds. Although plaintiffs allege that this grant money could be used for other purposes, they do not allege that it could be used for general expenditures or for obligations that are paid out of the city's general tax revenues. Further, plaintiffs have failed to allege facts that would tend to support their proposition that the city will save money if the EJS contract is cancelled. These defects in plaintiffs' complaint are fatal to their taxpayer action.

A second serious flaw in plaintiffs' argument

with respect to their taxpayer's claim is their failure to allege unlawful or fraudulent conduct on behalf of city officials with regard to the federal grant monies. Plaintiffs contend that officials of the Federal Department of Housing and Urban Development failed to follow regulations governing grant procedures, but plaintiffs have not made any claims which would suggest that these federal officials may be sued in a state court. Absent a congressional waiver of sovereign immunity, a federal official cannot be sued for exercising his authority in an unlawful manner where there is no allegation that the actions undertaken were unconstitutional. *Willingham v Lynn,* 381 F Supp 1119 (ED Mich, 1974). Therefore, the lower court's finding that plaintiffs have no standing to challenge the city's actions with respect to the federal grant is affirmed.

Similarly, we find that plaintiffs have failed to properly allege a cause of action with respect to a loan by the city of $250,000 to EJS. Although a taxpayer may seek to restrain the threatened misuse, as well as the actual misuse, of city funds, see *Cooper v Detroit,* 222 Mich 360, 363; 192 NW 616 (1923), in the matter before us plaintiffs have failed to indicate with particularity how general tax revenues will be affected by this loan. As the trial judge noted, "plaintiffs have nowhere alleged that they will face increased taxation from the project in issue nor do their pleadings suggest that they, as property owners, will suffer a diminution in land value as a result of this development". The record discloses that plaintiffs have failed to allege how this loan will act as a detriment to their rights as taxpayers. Therefore, we affirm the lower court holding that plaintiffs do not have standing to challenge this loan.

The third principal claim on which plaintiffs predicate standing to maintain this taxpayer's suit is that the Capitol Commons project has resulted in expenditures for city staff participation in contract negotiations with EJS.

In *Menendez v Detroit, supra,* 480-481, our Supreme Court addressed a similar type of argument:

"Plaintiffs stress, in their brief, the provision in the ordinance setting up the system and providing for issuance and payment of the bonds therefor, that, in substance, the cost of police enforcement of parking regulations shall not be considered an expense of the system. They say this imposes the cost of such police work on the general taxpayers. It is not made apparent that that is not already a charge against the taxpayers. It does not appear from the bill or exhibits how the establishment of the system and carrying out the provisions of the ordinance under attack will increase the cost of or the burden on the taxpayers resulting from police enforcement of parking regulations. It is not alleged, nor do plaintiffs contend, that use of such parking meter or facility revenues or any other public funds for police work in the enforcement of parking regulations or for the acquisition of parking facilities is unlawful * * *. Yet, this is essential to the plaintiffs' case."

Two factors fatal to the claim of standing by the plaintiffs in the *Menendez* case also are present in this case. Here plaintiffs have failed to show why staff efforts in negotiating a contract with EJS were unlawful. Although plaintiffs do allege that the city contract with EJS was an illegal one, they have not pointed to any statute, charter or ordinance provision making the contract unlawful. Moreover, they have not demonstrated how the city staff efforts themselves were in violation of law.

Plaintiffs also have failed to show with particu-

larity how city funds were spent to the detriment of taxpayers. The requirement that increased taxation be shown with particularity provides governmental units with a necessary shield to protect against judicial scrutiny of all governmental expenditures. As this Court stated in *Killeen v Wayne County Civil Service Comm*, 108 Mich App 14, 19; 310 NW2d 257 (1981):

"The bald allegation that tax monies are being expended is too general and conclusory to serve as a springboard for the maintenance of a taxpayer's suit since such allegations would be equally applicable to practically every action taken by a unit of government and would throw open the doors to unlimited, unrestricted citizen's lawsuits."

Plaintiffs raise a number of other theories on which they claim standing to prosecute this suit might be predicated. Some are set forth in that section of their brief arguing this issue; others are mentioned in their brief's statement of facts. None, however, are persuasive.

In pursuit of a meritorious theory of standing, plaintiffs claim that the city will receive an inadequate sales price for the Capitol Commons land in light of the financing benefits EJS will receive. We reject this claim because plaintiffs do not specifically allege that the sales price for the land itself is unlawful or fraudulent.

Plaintiffs next predicate standing on what is referred to as the "Benda transaction". However, even if the city acted in an ill-advised or improvident manner in entering into the "Benda transaction" contract, standing to maintain a taxpayer's suit cannot be grounded on decisions of a governmental unit that are merely unwise. 18 McQuillin, Municipal Corporations (3d ed), § 52.24, p 49.

Plaintiffs do not allege that the "Benda transaction" is unlawful or fraudulent. Therefore, it cannot be the basis of their standing to bring this action.

Plaintiffs also claim that taxpayers have lost money while the Capitol Commons land was dormant due to the failure of EJS to commence construction on the date indicated in its final proposal. However, once again, plaintiffs point to no unlawful or fraudulent conduct that would give rise to standing.

Plaintiffs further argue that they have suffered injuries that differ from those suffered by other city taxpayers. In general, the injuries cited are those to plaintiffs' interests as potential developers of the Capitol Commons project. However, the only unlawful activity plaintiffs alleged in their complaint was that of the Federal Department of Housing and Urban Development. Plaintiffs claim that this federal agency failed to comply with its regulations. As we previously noted, this claim is not cognizable in the courts of this state.

Finally, plaintiff Altman claims he will suffer injury as a competing apartment owner in the city on account of the Capitol Commons project. A similar type of claim was rejected by the Supreme Court in *Andrews v South Haven, supra.*

Our review of the entire record, in light of the arguments raised in plaintiffs' brief on appeal, convinces us that the lower court did not err in holding that plaintiffs lacked standing to maintain this action. Plaintiffs have not alleged any unlawful activity on behalf of the city that would give rise to a taxpayer's suit. Therefore, the lower court order dismissing this suit for lack of standing is affirmed.

We hold that the lower court did not err in

cancelling plaintiffs' notice of *lis pendens.* The benefit that plaintiffs would receive under the notice of *lis pendens* is too minimal in comparison to the harm that defendants will suffer. In *Silberstein v Silberstein,* 252 Mich 192, 194; 233 NW 222 (1930), the Supreme Court held that a technically proper notice of *lis pendens* which meets all of the statutory requirements could be cancelled on equitable principles if in the discretion of a trial judge the benefits of the notice are far outweighed by the damage it causes.

If the notice of *lis pendens* were revived in this case, progress on the Capitol Commons project likely would come to a halt. Thus, defendants stand to be greatly harmed by the filing of a notice of *lis pendens.* On the other hand, it is extremely unlikely that plaintiffs will ever succeed in this action. The equities then lie entirely on the side of the defendants. Therefore, we find that the lower court did not err in cancelling the notice of *lis pendens.*

Plaintiffs raise two other issues in this appeal concerning whether the trial judge erred in granting accelerated judgment against them on the basis of the doctrine of laches and whether the trial judge acted properly in dismissing both plaintiffs' taxpayer's suit and the action that they filed in their individual capacities on May 7, 1981. We have considered both of these questions and are convinced that neither of them warrants reversal. Our review of the record does not leave us with a definite and firm conviction that the trial judge erred in holding that plaintiffs were barred by the doctrine of laches, and it is clear that this equitable doctrine applies to both suits commenced by plaintiffs.

Affirmed. Defendants may assess costs.