**AMERICAN TOWN CENTER, Plaintiff–Appellant (89–1153/54), Plaintiff–Appellee (89–1722),**

v.

**HALL 83 ASSOCIATES, Defendant–Appellee (89–1153/54), Defendant–Appellant (89–1722).**

**Nos. 89–1153, 89–1154 and 89–1722.**

United States Court of Appeals, Sixth Circuit.

Argued Nov. 28, 1989.

Decided Aug. 17, 1990.

D. Michael Kratchman (argued), Christopher A. Andreoff, Evans & Luptak, Detroit, Mich., L. Stanford Evans, Vestevich, Dritsa, McManus, Evans, Payne & Vlcko, William J. Lamping, Bloomfield Hills, Mich., for plaintiff-appellant.

James E. Romzek, Fredric A. Smith (argued), Vivain B. Perry, Simpson & Moran, Birmingham, Mich., for defendant-appellee.

Before KEITH, JONES and BOGGS, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff, American Town Center Associates (ATCA), appeals the district court's grant of summary judgment for defendant, Hall 83 Associates (Hall 83), in this diversity action for specific performance of an agreement to sell real property. Hall 83 appeals an order refusing to enjoin state court proceedings commenced by ATCA. For the following reasons, we affirm in part and reverse in part.

## I.

This lawsuit concerns the alleged sale of the American Town Center Building (Building), a large office and retail complex in Southfield, Michigan, and 40 acres of adjacent land. The Building is owned by Hall American Center Associates Limited Partnership (the Building partnership) and the land is owned by American Center Properties Limited Partnership (the land partnership). Hall 83 is the managing general partner of each of the partnerships. Hall Financial Group (HFG) is a Texas corporation which conducts the real estate operations for Craig Hall, a Texas real estate syndicator.

In April 1986, Leslie Dick, a partner in ATCA, expressed an interest in purchasing the Building and land. On May 29, 1986, Dick sent a letter to Hall 83, expressing his willingness to pay approximately $67,000,-000.00 for the Building and the land. This letter is similar in format to several which followed in the course of the next two years, and they are appropriately characterized as "letters of intent." In a letter dated June 2, 1986, Hall 83 responded that the offer was "unacceptable" and that the Building was no longer on the market. In late 1986 and in 1987, Dick sent several letters of intent to Hall 83, each of which was rejected. On December 18, 1987, Dick sent a revised letter of intent offering $66,-000,000.00 for the Building and $6,000,-000.00 for the nearby acreage. The two parties then engaged in negotiations over the price of the adjacent land. On January 5, 1988, Bryan Kaminski of Hall 83 returned the letter of intent with marked revisions reflecting Hall 83's requested purchase price, which was $67,500,000.00 for the Building and $8,750,000.00 for the land. Dick and Kaminski spoke on January 6, 1988 about the December 18 letter of intent. Dick alleges that the two agreed on terms, and that Kaminski assured Dick that Hall 83 would sign a letter of intent which reflected their agreement. Kaminski alleges that he told Dick that he did not have the authority to bind Hall 83 to any agreement, and that he could only present the draft letter of intent to Ron Berlin or Craig Hall for their review.

On January 7, 1988, Dick sent the revised letter of intent to Hall 83. It is this letter that ATCA relies upon as constituting the *binding* contract. This draft met Hall's asking price for the Building, but compromised on a price of $7,500,000.00 for the adjacent land. The letter of intent stated that it would "serve as an ongoing expression of our interest and cumulative efforts to date ..." J.App. (Nos. 89–1153/1154) at 112. The lawyers for Hall 83 revised the January 7 letter of intent, changing several of the terms and adding conditions for sale, such as full partnership approval and ATCA's receipt of insurance. However, Hall 83 never sent a revised copy

to Dick. On January 11, 1988, Dick stated in a letter to Kaminski that:

[a]t this point in time I am interested in only one thing, and that is raising the appropriately structured financing for this transaction. I have no intention of getting mired in minutiae at this premature date, with no Letter of Intent signed on the details as yet to be negotiated in regard to a closing document.

*Id.* at 136. On January 12, 1988, Dick called Kaminski to inquire about the status of the letter of intent. Dick alleges that Kaminski told him that it would be signed within a day. Kaminski denies this allegation. On January 13, 1988, Kaminski sent a letter to Dick which stated in part the following:

... we have continued to work with you on a good faith basis in order to consummate a deal. However, our process with the city of Southfield to obtain approval for the additional 2,500,000 square feet of office is currently pending....

At this time we are unable to execute a letter of intent due to the negative impact it could have on our master plan approval....

Furthermore we would like for you ... to meet with us in our Dallas office to develop a plan to proceed further with this transaction.

*Id.* at 48. Subsequently, Dick telephoned Kaminski to discuss the status of the proposed sale. Transcripts from the telephone conversation reveal that Kaminski assured Dick that they had "an agreement on price and terms" and that Hall 83 would not "jerk the terms or maybe do another deal." *Id.* at 158.

During the next several months, ATCA proceeded as if there were a deal, meeting with prospective tenants, financiers, and investors. On March 23, 1988, Dick sent a letter to Kaminski asking for "a simple letter from your corporation that will acknowledge our agreement in regards to the sale as was represented to me on numerous occasions in which, as you know, I have relied on and continued to obtain financing for the purchase of the properties." *Id.* at 124. On April 14, 1988, Dick met with

Stanley Ferenc, a representative of Hall 83, and Shearson Lehman, the financier to the deal. According to Ferenc, he told Dick that Hall 83 did not have an agreement with ATCA to sell the Building and land. Dick denies that Ferenc ever told him that no agreement existed. On April 20, 1988, Ferenc sent a letter to Dick that stated "there does not exist at this time, nor has there ever been, any contractual relationship between the parties." *Id.* at 125. On June 2, 1988, Craig Hall, President of the Hall Group, sent a letter to Dick stating that there was never any agreement between ATCA and Hall 83 because Ferenc and Kaminski, while they could recommend deals to Craig Hall, did not have the power to enter into agreements for Hall 83. Hall noted that Ferenc and Kaminski had planned to propose the deal to him, but did not since "a written contract of any sort never materialized." *Id.* at 129. Hall also stated that he was open to a "real offer" for the Building and land of $76,500,000.00 if Dick could send earnest money of $1,000,000.00 within two weeks.

On August 5, 1988, ATCA filed a three-count complaint in the United States District Court for the Eastern District of Michigan, Judge Lawrence P. Zatkoff presiding, seeking specific performance and damages. Count one alleged that Hall 83 breached the written contract of January 7, 1988; count two alleged that Hall 83 breached its oral contract; count three alleged that Hall 83 is liable for fraud and misrepresentation. On January 18, 1989, the district court issued an opinion and judgment in favor of Hall 83. The district court ruled against ATCA on the first two counts of its complaint. With respect to the written contract claim, the court held that it was not a contract because there was no "meeting of the minds." *Id.* at 79. The court also granted summary judgment to Hall 83 on the oral contract claim, ruling that such a contract is clearly within the statute of frauds. *Id.* The court rejected ATCA's arguments that Hall 83's promise to proceed with the deal is enforceable, that Hall 83's actions constituted part performance, and that the statute of frauds had "evolved" out of existence in Michigan.

In addition, the court dismissed without prejudice the count alleging fraud and misrepresentation because it was not sufficiently pleaded under Fed.R.Civ.P. 9(b). Subsequent to its opinion, the court cancelled the notices of lis pendens that had been placed on the property because the underlying complaint had been dismissed.

The day after dismissal of its complaint in federal court, ATCA filed suit in Michigan state court against the Building partnership, the land partnership, and HFG. In the state court complaint, ATCA made several claims: that the January 7, 1988 letter of intent was a binding contract (count one); that the oral representations constituted either an oral contract or non-contractual promises that ATCA detrimentally relied upon (count two); that ATCA suffered consequential damages (count three); and that HFG committed fraud and misrepresentation and breached its duty to act in good faith (count four). J.App. (No. 89–1722) at 40. HFG and the partnerships filed a motion for summary judgment of this state court action based on the doctrine of *res judicata*. State court Judge Francis X. O'Brien ruled that summary judgment would be inappropriate because (1) one of the parties in the state court action, HFG, is possibly not in privity with Hall 83, the party to the federal judgment; and (2) there was a dispute regarding whether or not some of the state court claims were fully litigated in federal court. *Id.* at 92–93. As such, the state court concluded that it should not deny ATCA its "day in court." *Id.* The Michigan Supreme Court recently denied the application for leave to appeal this decision. *American Town Center Associates v. Hall American Center Associates Limited Partnership, et al.*, No. 86197 (November 29, 1989). After the initial state court decision, Hall 83 returned to the federal district court and requested the court to enjoin ATCA from further pursuing the state court litigation because ATCA was relitigating claims already decided by the federal court. The district court declined to enjoin ATCA from pursuing the state court proceedings, noting that the state court

found that ATCA was not relitigating its claims.

## II.

We review *de novo* the decision of the district court to grant summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Fed.R. Civ.P. 56 provides that a court may enter summary judgment on a claim if the court finds that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "The moving party is 'entitled to a judgment as a matter of law' [where] the nonmoving party has failed to make a sufficient showing on an essential element of her case." *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552 (citation omitted).

■ Based upon a letter of intent and representations made by officers and employees of HFG that there was a "deal," ATCA contends that an enforceable contract was formed. The district court granted summary judgment on two grounds: that the letter of intent was not a definitive agreement, but instead an unaccepted offer that was a part of continuing negotiations; and that the agreement violated the statute of frauds. ATCA contends that the district court actually resolved disputed issues of material fact without a trial. On this basis, ATCA does not ask this court to decide if there was a contract, but instead to reverse the district court on the basis that the existence of the contract was an issue of fact that could not be decided on summary judgment.

ATCA relies upon *Opdyke Investment Co. v. Norris Grain Co.,* 413 Mich. 354, 320 N.W.2d 836 (1982), which involved an ill-fated plan to construct a hockey arena near the Pontiac Silverdome for occupancy by the Detroit Red Wings. That plan was abandoned in favor of Joe Louis Arena in the City of Detroit. A "Letter of Intent" embodied the essential terms of the contract for the Pontiac stadium. The trial court in that case ruled that the letter was at most an unenforceable agreement to agree and was insufficient to satisfy the statute of frauds. *Id.* at 358, 320 N.W.2d

836. The Michigan Supreme Court reversed. It noted that "[a] contract to make a subsequent contract is not per se unenforceable; in fact, it may be just as valid as any other contract.... Like any other contract, a contract to make a contract can fail for indefiniteness if the trier of fact finds that it does not include an essential term to be incorporated into the final contract." *Id.* at 359, 320 N.W.2d 836. The court added that while the fact that the parties left open certain issues might indicate a lack of intent to create a binding contract, it is also possible that the parties "intended to execute a series of increasingly detailed contracts as the project progressed ..." *Id.* at 360, 320 N.W.2d 836. As such, the Michigan Supreme Court concluded:

> Whether the parties intend to be bound only by a formally written and executed final document is a question of fact, not a question of law; in most cases the question is properly left to the jury.

*Id.*

Similarly, the court ruled that there was a "genuine issue of material fact" as to whether the defendants signed the letter of intent and as to whether "delivery back" was required under the letter. *Id.* at 363–64, 320 N.W.2d 836. After noting that the statute of frauds remains "firmly entrenched in our law," the *Opdyke* court noted that the "statute does not require the entire contract to be written; a 'note or memorandum' of the full contract will suffice." *Id.* at 367, 320 N.W.2d 836. While the *Opdyke* court decided that acceptance of the contract can be made by means other than "signature and delivery back," it did not, as ATCA suggests, decide that there was no longer a need for a signature under the statute of frauds. Instead the *Opdyke* court decided that formal acceptance requirements, such as delivery back, could be waived or estopped if the method of acceptance is reasonable. *Id.* at 363, 320 N.W.2d 836.

In the instant case, there may be a dispute as to whether the parties intended to be bound by the January 7, 1988 letter of intent. However, we hold that such an

agreement would be void under the statute of frauds. Under Michigan law, there must be a contract in writing and signed by the seller of the property for any contract to be enforceable. M.C.L.A. § 566.108 (West 1989). There is no dispute that the letter of intent was unsigned. A copy of the January 7, 1988 letter with the signature line unobscured clearly shows that no representative of Hall 83 ever signed the letter. Moreover, letters dated March 23, 1988 and April 28, 1988, in which Dick asked for a written acknowledgment of the agreement between the parties establishes that Dick wanted such a signature. ATCA presents a persuasive argument that whether Hall 83 orally accepted the letter of intent is a disputed material fact. However, even if Hall 83 did accept the contract orally, any such contract is not enforceable under the statute of frauds. In fact, the historical purpose of the statute of frauds' signature requirement was to avoid situations like the instant one, where each side makes conflicting allegations regarding their oral understanding.

### III.

ATCA next argues that the district court improperly dismissed the third count of the complaint—fraud and misrepresentation. The court ruled that ATCA had failed to plead fraud with sufficient particularity under Fed.R.Civ.P. 9(b), which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The district court noted the five elements of common law fraud in Michigan:

(1) there was a material representation by defendant that was false;

(2) the defendant knew that it was false when he made it or made it recklessly without any knowledge of its truth and as a positive assertion;

(3) the defendant made it with the intention that it should be acted upon by plaintiff;

(4) plaintiff acted upon it; and

(5) thereby suffered injury for which he sues.

*Eaton Corp. v. Easton Associates,* 728 F.2d 285, 292 (6th Cir.1984). The district court then reviewed ATCA's complaint and concluded that nothing in the complaint supported the conclusion that Hall 83 knowingly or recklessly made false statements. J.App. (Nos. 1153/1154) at 84. The complaint reads as follows:

46. Defendant made or caused to be made numerous misstatements of fact and misrepresentations with respect to the contract between the parties and the sale of the Building and land.

47. ATCA relied on Defendant's fraudulent statements and misrepresentations and was injured as a result thereof.

*Id.* at 18.

██ This circuit has noted that Rule 9(b) requires plaintiffs at a minimum "to allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corporation,* 749 F.2d 1205, 1216 (6th Cir.1984) (citations omitted). "A complaint should not be dismissed 'unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Michaels Building Company v. Ameritrust Company, N.A.,* 848 F.2d 674, 679 (6th Cir.1988) (citation omitted). In *Michaels,* this court noted that Rule 9(b) must be read in conjunction with Rule 8, which calls for short, concise statements. *Id.* As such, "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Id.* Upon review of the entire complaint, we find that it met the requirements of Rule 9(b). While paragraphs 46 and 47 only parroted the requirements for fraud under Michigan law, earlier parts of the complaint stated the facts underlying the allegations of fraud. In particular, paragraphs 10–14 elaborate the communications between Dick and Hall's representatives; paragraphs 15 and 16 allege that Kaminski assured Dick on January 6, 1988 that the letter of intent would be signed, an event which did not occur; and paragraphs 17–19 allege that Kaminski assured Dick that the

letter of intent would be signed on January 12, 1988 and that one day later, Dick received a letter from Kaminski stating that Hall 83 would be unable to sign the letter of intent. As such, we find that ATCA's complaint gives "fair notice" to Hall 83 of the substance of the claim of misrepresentation. Thus, we reverse the district court's dismissal of count three.

## IV.

■ ATCA also alleges that the district court's cancellation of the notices of lis pendens was improper because it was without jurisdiction to make such a cancellation. The notices of lis pendens, telling all parties interested in the properties that they are the subject of the instant litigation, had been recorded on August 30 and September 8, 1988. On January 19, 1989, one day after the district court's judgment for Hall 83, ATCA filed its notice of appeal. Later in that day, the district court heard a motion by two non-parties (the two limited partnerships that owned the Building and the land) to cancel the notices of lis pendens. The district court ordered the cancellation because the two-prong test for cancellation of lis pendens had been satisfied: that the plaintiff was unlikely to prevail on the merits; and that the equities titled in favor of cancellation. *See Altman v. City of Lansing*, 115 Mich.App. 495, 506–07, 321 N.W.2d 707 (1982). ATCA argues that its filing of the notice of appeal divested the district court of the jurisdiction to cancel the notices.

In *National Labor Relations Board v. Cincinnati Bronze*, 829 F.2d 585, 588 (6th Cir.1987), this court ruled that while as a general rule a notice of appeal divests the district court of its jurisdiction to expand upon an opinion, the district court retains jurisdiction to "enforce its judgment so long as the judgment has not been stayed or superseded." *Id.* (citation omitted). In *Cincinnati Bronze*, the district court had issued an order requiring the president of Cincinnati Bronze to comply with a subpoena to produce certain documents. After the president appealed, the district court found him in contempt for failure to comply with the order. This circuit upheld the authority of the district court to issue the contempt citation, noting the crucial distinction between *expansion* and *enforcement* of judgments. In the instant case, the cancellation of the notices of lis pendens was no more than enforcement of the court's judgment. With the complaint dismissed, the notices of lis pendens no longer served any purpose. Thus, we conclude that the district court had jurisdiction to cancel the notices of lis pendens.

## V.

Hall 83 appeals the refusal of the district court to enjoin ATCA's later state proceedings.

### A.

■ ATCA argues that its filing of a notice of appeal divested the district court of jurisdiction to issue an injunction against the state proceeding. ATCA cites *Henry v. Farmer City State Bank*, 808 F.2d 1228 (7th Cir.1986), a case where the plaintiffs filed a complaint in federal district court. The complaint was dismissed, and the plaintiffs appealed to the Seventh Circuit. While the appeal was pending, plaintiffs filed a complaint with similar claims in an Illinois state court. Subsequently, the defendants obtained an injunction pursuant to 28 U.S.C. § 2283 to prohibit the Illinois state court from conducting further proceedings. The Seventh Circuit held that the district court was without jurisdiction to issue the injunction:

> At the time that the notice of appeal was filed, however, it was possible that the district court would have been reversed. Had we reversed the dismissal of the amended complaint, the district court would then have been in the unenviable position of having issued an injunction to protect and effectuate a judgment reversed on appeal. It is precisely such conflicting rulings that the rule transferring jurisdiction from the district court to the appellate court upon the filing of a notice of appeal is designed to prevent.

808 F.2d at 1241.

The standard for jurisdiction after the filing of the notice of appeal enunciated in

*Cincinnati Bronze* is that a district court may enforce its judgment but not expand upon it. In contrast to the cancellation of lis pendens, which was simply an enforcement of the judgment, enjoining state litigation entails a much greater involvement by the district court. Specifically, to issue an injunction, the district court would have to rule on the *res judicata* effect of its judgment, thus requiring a comparison between the state complaint and the federal action. Since there are different parties and additional claims in the state court action, the district court would be *expanding* upon its opinion rather than simply *enforcing* its judgment, the key distinction of *Cincinnati Bronze*. Thus, we conclude that the district court was without jurisdiction to enter an injunction.

## B.

■ Even if the court had jurisdiction to enjoin the state litigation, we hold that the district court properly denied the injunction. It is within the district court's discretion to decide whether or not to enjoin state proceedings under the relitigation exception of the Anti–Injunction Act, 28 U.S.C. § 2283 (1982), which provides that a court may stay proceedings in order to "protect or effectuate its judgments." *See Kaempfer v. Brown*, 684 F.Supp. 319, 323 (D.D.C. 1988), *aff'd*, 872 F.2d 496 (1989). We will not disturb the district court's decision absent abuse. Courts have noted that we should "proceed with great restraint and caution before reversing the refusal of a district court judge to enjoin a state pro-

ceeding." *De Cosme v. Sea Containers, Ltd.*, 874 F.2d 66, 68 (1st Cir.1989). " '[A] complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings. If we err, all is not lost. A state court is as well qualified as a federal court to protect a litigant by the doctrines of res judicata [sic] and collateral estoppel.' " *Id.* at 68–69 (citation omitted).

Two cases in this circuit have set forth the standards for issuing injunctions in such circumstances. In *Silcox v. United Trucking Service*, 687 F.2d 848, 850 (6th Cir.1982), this court "recognized that the power of a district court to enjoin a litigant from proceeding in a state action, although it should be exercised sparingly, exists ... under the 'relitigation exception'...." The *Silcox* court "emphasized that the principles of equity, comity, and federalism oblige federal courts to act with great restraint, even where the power to grant an injunction has been found to lie with one of the exceptions to the Anti–Injunction Act." *Id.* In a similar case, *Lamb Enterprises v. Kiroff*, 549 F.2d 1052, 1062 (6th Cir.1977), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977), the court noted that the *res judicata* and collateral estoppel defenses remain available before the state court and concluded that "the United States District Court and the United States Court of Appeals do not sit in review of the decisions of State courts."[1]

---

**1.** ATCA also argues that the state court decision was entitled to full faith and credit from the federal district court. However, the instant case is distinguishable from *Parsons Steel v. First Alabama Bank*, 474 U.S. 518, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986). In *Parsons*, Parsons Steel filed similar lawsuits against First Alabama Bank in both the federal and state courts. The defendant Bank received a favorable judgment in the federal court and then pleaded res judicata in the state action. However, the Alabama state court ruled that res judicata did not bar the lawsuit. As a result, Parsons Steel sought and received an injunction from the federal court against further state proceedings. The Supreme Court decided that the injunction was improper because it did not give full faith and credit to the state decision:

We believe that the Anti–Injunction Act and the Full Faith and Credit Clause can be construed consistently, simply by limiting the relitigation exception of the Anti–Injunction Act to those situations in which the state court has not yet ruled on the merits of the res judicata issue. Once the state court has finally rejected a claim of res judicata, then the Full Faith and Credit Act becomes applicable and the federal courts must turn to state law to determine the preclusive effect of the state court's decision.

*Id.* at 524, 106 S.Ct. at 772. In *Hooks v. Hooks*, 771 F.2d 935, 948 (6th Cir.1985), the court required a final rejection of the res judicata claim, with the state law determining whether the state court decision was "final." In the instant case, the Michigan state court's denial of summary

In the instant case, there was considerable confusion over the relationship of the parties in the state and federal proceedings and over the additional issues brought in the state court. Because of this confusion, the state court denied summary judgment on *res judicata* grounds, though it left the door open for granting judgment on this basis after further factual development. Given the considerations of comity and the unwillingness of federal courts to review state court decisions, we conclude that the district court did not abuse its discretion in refusing to enjoin the state proceedings. Because we affirm the denial of the injunction, we need not address ATCA's argument that Hall 83 would not suffer irreparable harm—an alternate basis for affirmance.[2]

## VI.

For the foregoing reasons, we AFFIRM the judgment and orders of the district court with respect to the contract claims, the cancellation of the notices of lis pendens, and the denial of the injunction. We REVERSE and REMAND the fraud claim for further proceedings consistent with this opinion.

judgment was not a final decision of that court. The court decided that summary judgment was not appropriate at that time because several facts were still disputed, leaving open the opportunity to raise the issue of res judicata again. Under Michigan Court Rules 2.604(B), an order is not final if "subject to revision before entry of judgment adjudicating all the claims ..." Thus, we conclude that the state court judgment was not entitled to full faith and credit by the federal court.

2. Another alternative basis for affirming the district court's denial of the injunction concerns the scope of the relitigation exception to the Anti–Injunction Act. In the instant case, there were additional claims in the state complaint that were not discussed in the federal judgment—the breach of good faith and the promissory estoppel issues. Because these claims could have been raised in the federal complaint, the state has the authority to bar them under res judicata. But the issue here is whether the district court could enjoin state proceedings under the relitigation exception, where some of the issues in the state complaint were not raised in

BOGGS, Circuit Judge, concurring in part and dissenting in part.

While I concur in almost all of the court's opinion in this case, I must dissent from section III, which overturns the district court's dismissal of ATCA's claim for fraud and misrepresentation based on ATCA's failure to plead fraud with particularity, as required by Fed.R.Civ.P. 9(b). Here the court rests its approval of the complaint on the fact that the complaint does include ten paragraphs of factual allegations (paragraphs 10–19). However, not one of these paragraphs indicates what facts, if any, constituted fraud or misrepresentation. Many of the factual allegations are items on which there seems to be little dispute (paragraph 12, "Mr. Dick sent Bryan Kaminski another letter...."; paragraph 15, "Mr. Dick spoke with Mr. Kaminski...."). Paragraphs 46 and 47, as the court so aptly notes, "only parrot the requirements of fraud under Michigan law...." In so parroting, they state only that "numerous misstatements were made," without giving any indication as to which of the previous statements were such. In addition, nowhere, either in these paragraphs or elsewhere, is there the allegation that such statements were made "knowingly or recklessly." The defendant is apparently left

the federal case. The *Parsons* Court expressly refused to reach the contentions that "the relitigation exception to the Anti–Injunction Act was never intended by Congress to allow the issuance of a federal-court injunction in situations where the later state action involves claims that could have been litigated, but were not actually litigated, in the prior federal action." 474 U.S. at 526 n. 4, 106 S.Ct. at 773 n. 4. In *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147–48, 108 S.Ct. 1684, 1690, 100 L.Ed.2d 127 (1988), the Supreme Court came closer to resolving this issue:

[T]he relitigation exception was designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court ... [A]n essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings actually have been decided by the federal court.

*Id.* Thus, the additional claims in the state court proceeding limit the federal court's authority to enjoin. As such, the refusal to enjoin the Michigan proceeding was proper.

with the responsibility of making a broadside defense of each and every statement of fact in the complaint. This is precisely what Rule 9(b) is meant to prevent.

The court's opinion relies on *Michaels Building Company,* where the "particular fraud count specifie[d] the parties and the participants to the alleged fraud, the representations made, the nature in which the statements [were] alleged to be misleading or false, the time, place and content of the representations, the fraudulent scheme, the fraudulent intent of the defendants, reliance on the fraud, and the injury resulting from the fraud." 848 F.2d at 679 (footnote omitted). The *Michaels Building Company* court noted that "Rule [9(b)] requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* at 680. We warned that "there must be a *reasonable* basis for a plaintiff's complaint" and that attorneys must not be allowed to abuse "the liberal pleading provisions of Rule 8." *Ibid.* My objection is not that the allegations in the complaint are "short, concise statements" but that they do not present a "reasonable basis" for the fraud claim. They fail to reveal wherein lay the misrepresentation and which statements were made with the necessary mental state of "knowing or reckless." These elements are crucial, since "the purpose undergirding the particularity requirement of Rule 9(b) is to provide a defendant fair notice of the substance of a, plaintiff's claim...." *Id.* at 679.

I therefore respectfully dissent with regard to the reversal of the district judge's dismissal of the fraud claim.