See also, D.C., 638 F.Supp. 1301.

**Dennis Hazen HUGULEY, et al., Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, Defendant.**

**Civ. A. No. 83–2864.**

United States District Court, E.D. Michigan, S.D.

Sept. 5, 1989.

Dennis D. James, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick, Ronald Reosti, and Godfrey J. Dillard, Detroit, Mich., for plaintiffs.

Mark R. Flora, Office of the Gen. Counsel, Gen. Motors Corp., Detroit, Mich. and

Barbara A. Brown, Paul, Hastings, Janofsky & Walker, Washington, D.C., for defendant.

## OPINION APPROVING CONSENT DECREE AND ORDER DENYING MOTION FOR SUBSTITUTION OF COUNSEL

FEIKENS, District Judge.

This case began with a class action complaint filed in 1983 by Laras Eason on behalf of himself and all similarly situated black salaried employees against General Motors Corporation (General Motors) pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (Title VII), the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101, *et seq.*

Several amendments to the class action complaint were filed; it was amended for the third and final time by present counsel in 1986.

The third amended complaint alleges that the past and then-current General Motors salaried employee appraisal systems discriminated on the basis of race in appraisal ratings and with respect to promotions, demotions, layoffs, recalls, pay and transfers. The scope of the class was narrowed to black salaried employees in the states of Michigan, Ohio and Indiana.

Previous plaintiff class counsel were replaced by current counsel in April of 1985.[1]

A description of the plaintiff class is requisite. By order of October 16, 1986 a class was certified consisting of all black salaried employees of General Motors in Michigan, Indiana and Ohio who were subject, between October 8, 1982 and September 25, 1986, to the General Motors appraisal systems for salaried employees. Those individuals employed in the General Motors legal and personnel departments designated as members of the General Motors defense team were excluded from this class. In 1987 the class was further limited to exclude black bonus-eligible employees in Michigan, Ohio and Indiana.

Prior to the onset of settlement negotiations, defendant challenged the certification of the class and filed a petition for a writ of mandamus with the United States Court of Appeals for the Sixth Circuit. The petition for mandamus was not granted, but the Court of Appeals ordered an evidentiary hearing. That order was vacated when the Court of Appeals realized that it had not received the brief of plaintiff class before taking action. As a part of wide-ranging settlement negotiations, the composition of the class was agreed to and, by letter of May 19, 1989, the parties requested the Court of Appeals to hold the mandamus petition in abeyance pending approval of the consent decree then being fashioned by the parties.

To return to the chronology of the case, the parties then engaged in extensive discovery. Personnel files of 500 randomly selected white and black salaried employees were furnished to the plaintiff class and, thereafter, computer tapes containing personnel information on all past and present General Motors employees who worked in the tri-state area from 1982–1986 were provided.

Extensive discovery, by way of depositions of General Motors officials, concerning the operations of the salaried employee appraisal systems, the training provided to supervisory personnel in connection with these systems, and the analysis performed of the results of the systems was also undertaken by the plaintiff class.

In 1988, settlement negotiations were renewed and carried on continuously from July through late October. Negotiations focused on discretionary salary increases and promotions, the two principal employment practices that plaintiff class alleged were statistically linked to the employee appraisal system. It is this appraisal system which is criticized as being discriminatory on a racial basis as it applies to black

---

1. Previous counsel were discharged by class representatives. Fee problems developed and a hearing and opinion followed. *See Huguley, et al. v. General Motors Corporation,* No. 84–3865 (E.D.Mich. May 26, 1989).

salaried employees of General Motors in Michigan, Ohio and Indiana.

A settlement agreement was reached in principle on October 21, 1988. A detailed proposed consent decree (decree) was submitted to the court on January 29, 1989.

In accordance with Rule 23 of the Federal Rules of Civil Procedure, *see Williams, et al. v. Vukovich, et al.,* 720 F.2d 909 (6th Cir.1983), this court preliminarily approved the proposed consent decree by order of February 3, 1989. Notice was given to all members of the class that objections to the proposed consent decree were required to be filed by March 31, 1989. On April 7, 1989 an additional order was entered extending the time for filing of objections through April 30, 1989, and a hearing on objections was noticed for and held on June 26–27, 1989.

The consent decree resolves all claims of race discrimination asserted in, or in any way placed in issue by, the third amended complaint. This includes all claims related to any alleged racially discriminatory purpose, adverse impact or effect of the General Motors appraisal system for black salaried employees in the tri-state area or in any way related to race discrimination in promotions, pay, demotion, transfer, layoff, recall or other personnel decisions, including alleged retaliation for participation in this suit and from any claim for attorney fees and costs.

*Prospective Relief*

Central to the dispute between the parties is the General Motors salaried employee appraisal system. General Motors, on an annual basis, appraises the performance of its salaried employees. There are three steps utilized in the appraisal cycle: performance planning, on-going performance review, and completion by the employee of the appraisal worksheet. An appraising supervisor completes the performance appraisal review, and a discussion with the involved employee results in the final step in the appraisal cycle.

The heart of the settlement is contained in the establishment of a system for monitoring discretionary salary increases and promotions for each of the five reporting periods of the decree for all then-employed, non-bonus eligible black salaried employees in the tri-state area. The complaint of race discrimination in the appraisal system is met and resolved through this adjustment system of monitoring discretionary salary increases and promotions. The appraisal system itself is left relatively untouched.

While there appears to be no precedent approving the type of computerized monitoring system established by the consent decree, the system adjusts for imbalances that may occur in the five-year period by providing that as of the monitoring date for each reporting period (a calendar quarter in the five-year term of the decree), the percentage of discretionary salary increases for black salaried employees in the tri-state area and the percentage of discretionary salary increases for all other salaried employees in the tri-state area will be calculated for each salary level.

For any level at which the difference in the percentage of discretionary salary increases for black salaried employees when compared to the percentage for non-black salaried employees exceeds 2 standard deviations, adjustments to the salaries of black salaried employees on that level, for that year, will be made to achieve a difference of no more than 1 standard deviation.

The consent decree states how adjustments will be administered in accordance with the salary administration plan in effect for the year in which the differential occurs.

Promotions likewise are monitored for each level by comparing the percentage of actual black promotions by level in the tri-state area to the percentage of expected black promotions generated by a computer model. If these promotion goals are not satisfied, then certain catch-up goals will be established.

The decree provides the methodology for monitoring these promotions as well as a procedure for adjustments. Important to the monitoring system is a provision that if, for any two consecutive reporting periods, the tri-state figures show that the

percentage of actual black promotions in a given level differs from the expected percentage of black promotions by more than 1.5 standard deviations, but less than 2 standard deviations, the underlying data for that level for the two periods will be aggregated. If the aggregated data reveal a difference between the percentage of actual and expected black promotions of more than 2 standard deviations, but less than 3 standard deviations, then the number of promotions of blacks required to bring the shortfall within 1.5 standard deviation will be the catch-up number for the next period.

If the aggregated data reveal a difference between the percentage of actual and expected black promotions of more than 3 standard deviations, then the catch-up goal for the next reporting period will be the number of promotions required to bring the difference within 2 standard deviations.

The decree provides for a detailed, written, annual report to plaintiffs' counsel concerning the group monitoring system and methods by which the report can be reviewed and challenged.

With regard to the commitment of General Motors to attain the promotion goals and/or catch-up promotions, insofar as that commitment is subject to the availability of qualified and interested black candidates for promotion, General Motors may assert a good faith explanation.

The decree contains a detailed method for individual monitoring so as to provide a procedure for any employee who disagrees with his or her grouping/ranking.

Finally there are miscellaneous provisions with regard to notice, modification, confidentiality, restrictions on future activities of attorneys and experts for the plaintiff class, and provisions regarding construction and enforcement of the decree.

It provides that it shall be effective and binding for a five-year period from the time the decree has been finally affirmed.

### Monetary Relief

The consent decree also provides monetary relief to certain ex-employee class members, including ex-employees involuntarily terminated, a one-time salary adjustment for certain incumbent employee class members, for named plaintiffs, for anecdotal witnesses, for former anecdotal witnesses and for potential anecdotal witnesses, and for attorney fees and costs. The details of the decree providing monetary relief are discussed below in that portion of the opinion dealing with objections.

### Objections to the Proposed Consent Decree

Plaintiff class consists of nearly 10,000 black salaried employees in Michigan, Ohio and Indiana. Approximately 15% of the plaintiff class filed objections. Many of these objections were identical in form; many employees objected to the decree's requirement of a general release by those employees receiving money benefits and that the monetary relief for the employee class was neither equitable nor adequate. Another group, again in identical form, objected to the fact that General Motors did not admit to unlawful conduct, that employees involuntarily released could not receive an award, that *all* incumbent employee class members should be given some monetary compensation, and that the proposed monitoring system is vague. They also claimed that the consent decree would stifle individual claims for relief. Other objectors claimed that the good faith defense permitting General Motors to explain a failure to meet the group monitoring system goals was too vague.

An analysis of the objections indicates that the overwhelming number of complaints claim that monetary relief is insufficient. While the relief provided in the group monitoring system provides major relief to the class, the objectors focus primarily on the lack of adequate compensation for alleged past discrimination.

In the hearing on objections, the objectors, by consent,[2] were represented by God-

---

**2.** Diverse clusters of objectors were either represented by other counsel or by themselves. At the hearing there was general agreement that

they would be represented by lead counsel, Godfrey Dillard.

frey J. Dillard, and leeway was given to him and the objectors to amplify objections filed with the court. This was helpful in that it furthered an understanding of the general written objections, which in many instances were stated in broad form and not precisely described.

As indicated, the heart of this consent decree is the group monitoring system. It provides significant affirmative action relief. The monetary relief is secondary, and any consideration of monetary relief must be balanced with the massive potential relief provided in the group monitoring system.

The court approves the group monitoring system provided for in the decree. General Motors recognizes that plaintiff class claims an imbalance in promotion and salary adjustments because of alleged racial discrimination. This innovative monitoring system addresses that concern. The court notes that this procedure nonetheless also provides for promotion and salary adjustment based upon individual qualifications.

Of nearly 10,000 class members, approximately 2,800 are ex-employees who will share in a pool of $1–1.6 million, depending on the number of claims filed. One written objection stated that ex-employees who had been involuntarily terminated could not share in this pool. That objection has been removed by allowing their participation. Fourteen percent of the incumbent employee class whose salaries are furthest below statistical white salaried employees will receive first-year base salary adjustments ranging between $800–1,200. This equals a first-year distribution of base salary increases of $1 million to approximately 1,000 incumbent employee class members. The court approves of these significant distributions.

In considering the award to incumbent employees, the court notes that the incumbent employees receive a substantial benefit from future affirmative relief, which is the pre-eminent goal of this consent decree.

Regarding ex-employees, their recovery, of course, can only be monetary. Objection was raised that the ex-employee award pool should be fixed and not based upon the number of claim forms received. The consent decree provides that the award pool increases and decreases proportionately to the number of claims received. The court agrees that the amount of money an individual receives as an ex-employee should not depend on the number of claims filed.

The consent decree provides also that an additional group of eighty-eight named potential and anecdotal witnesses and named plaintiffs will receive a one-time distribution of approximately $322,496. As to these named plaintiffs and witnesses receiving significant awards, the court notes there have been no objections criticizing these awards as too large. Objections, rather, have been made that the awards are too small. Named plaintiffs and witnesses are entitled to more consideration than class members generally because of the onerous burden of litigation that they have borne. I find this to be entirely fair.

Objection was made that class members are unprotected if General Motors continues the practices complained of in the case. However, the relief for individual claimants only releases General Motors for the practices complained of up to the date of approval of the consent decree.

Objection was made also that the consent decree fails to provide for an "opt-out" of individuals who desire not to be bound by the provisions of the consent decree. The court certified this class in accordance with the provision of Federal Rules of Civil Procedure 23(b)(2) (FRCP 23(b)(2)). This case reflects a typical FRCP 23(b)(2) class action settlement. Plaintiff class sought correction through affirmative action in the group monitoring plan for an imbalance[3] allegedly caused by reason of discrimination in promotions and salary adjustments. By their negotiations and settlement the parties have agreed that the prerequisites for the certification and maintenance of the

3. The possibility of imbalance is tacitly recognized by General Motors. *See Affidavit of Joan G. Haworth* (attached as Ex. 4 to *Memorandum of Defendant General Motors Corporation In Support of Approval of the Consent Decree* (filed June 28, 1989)).

class action are clearly satisfied. Common questions of law and fact substantially predominate, and the claims of the named plaintiffs are typical of the claims of the class. The named plaintiffs do fairly and adequately protect the interests of the class, and their current counsel are skilled in the handling of employee discrimination cases. The requirements for certification under FRCP 23(b)(2) are satisfied.

Further opportunity was afforded at hearing to those individuals who had any claims against General Motors which were the subject of the third amended complaint; they were permitted to present reasons why their cases should not be precluded by approval of the decree. Other than general statements indicating that an opt-out clause should be contained in the consent decree, this was not urged by objectors at the hearing. Objection was made that class members were not protected against retaliation by General Motors for participation in this case. It is clear that the consent decree specifically states that a class member has a right to be protected against such retaliation.

The consent decree likewise protects class members against the release of claims challenging future actions on the part of General Motors.

The nondisclosure provisions also are reasonable. These provisions protect sensitive personnel information because of privacy concerns.

Objection was made that an ex-employee award should not be contingent upon filing a proper claim form. This objection is without merit. The claim form itself is a simple one requiring answers to six questions.

The monitoring system provided for in the consent decree was criticized by the objectors. It is significant that criticisms of the monitoring system were largely conclusory. The court finds that the group monitoring system devised in this consent decree is innovative. The system requires that discretionary salary increases and promotions to black employees shall not deviate more than 2 standard deviations from those of comparably qualified white em-

ployees at each pay level of each year for a five-year monitoring period. Essentially the design is that a computer will generate a white employee model of success with respect to discretionary pay increases and promotions and then apply that model to the comparable black employee population to reach an expected number of pay increases and promotions.

Certain objectors pointed out that the monitoring should be on a facility-by-facility basis rather than on a company-wide basis at each employment level. It appears to the court that a company-wide population for each level would more clearly permit discriminatory patterns to emerge.

The objection that the five-year monitoring period is too short is without merit.

The claim is made that 2 standard deviations allow too much leeway in the monitoring plan. It is clear that 2 standard deviations are a widely accepted statistical range applied when considering whether employers have engaged in discrimination. *Hazelwood School District v. U.S.*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977); *Castaneda, Sheriff v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977).

Both at the objectors' hearing and in a second hearing held on August 11, 1989, in which some of the objectors sought to have current counsel for the plaintiff class removed, it was alleged that plaintiffs' representation is inadequate because, of the named plaintiffs, only Larry Dodson remains a current employee of General Motors. Persons who are employees of a company at the start of a class action, but who are no longer employees when a consent decree is sought to be approved, do not by reason of their ex-employee status become inadequate class representatives. *See Senter v. General Motors*, 532 F.2d 511 (6th Cir.1976), *cert. denied*, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976).

In any event, at the hearing, plaintiff class indicated that they would have two current General Motors employees, Darnita Stein of Michigan and Robert Raglin of Ohio, added as named plaintiffs. General Motors has indicated that it will not object

to the addition of these persons as named plaintiffs.

Finally, an objection is made that there is insufficient employee representation on the individual monitoring panels. The independent review panel is to be comprised of five employees—two appointed by General Motors, two by the employees from a list provided by management outside of the employees' chain of command, and one by the employee. This appears to be a fair arrangement and provides for review in an acceptable manner. As counsel for the plaintiff class have pointed out, it would be remarkable if management surrendered this decisional process to complete employee control.

### Attorney Fees and Costs

The consent decree provides that plaintiff counsel shall be paid $457,000 in attorney fees. This covers the period from the onset of plaintiff counsel's activity in the case (April 1985) up to October 21, 1988. For work performed by plaintiffs' counsel after that date, General Motors will pay such fees as the parties may agree at the hourly rates set forth in the consent decree. As to costs, plaintiffs' counsel represented in the *Brief In Support Of Plaintiffs' Answer To Plaintiff–Objector's Motion For Substitution of Attorney*, filed August 8, 1989, that the firm of Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick (Lopatin, Miller) has advanced over $200,000 in expenses. Plaintiff class remibursed Lopatin, Miller for $20,000 of this $200,000.

Attorney fees and costs were negotiated by the parties. The court is satisfied that, through the adversary process involved in the negotiation and settlement of this substantial class action, the nature and extent of the legal services provided by plaintiff counsel and the costs expended were carefully considered.

No written objections were filed regarding the amount of fees allotted by the consent decree to plaintiff counsel. This opinion will later discuss a motion filed by objectors for the substitution of objectors' counsel, Godfrey J. Dillard, for Lopatin, Miller. Even though objectors challenged the representation of Lopatin, Miller, no objection was made to the amount of fees to be paid.

Accordingly, the consent decree's provision for the payment of attorney fees and costs is approved.

### Conclusion

■ The court summarizes its findings as follows:

Terms of the consent decree are fair, reasonable, adequate and consistent with the public interest in settling disputes. ("The settlement is consistent with the public interest. '[T]here is an overriding public interest in settling and quieting litigation.'" *Van Bronkhorst, et al. v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir.1976). "Voluntary out-of-court settlement of disputes is highly favored in the law." *In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 758–59 (E.D.N.Y. 1984), *affirmed* 818 F.2d 145 (2d Cir.1987), *cert. denied* 484 U.S. 1004, 108 S.Ct. 695, 98 L.Ed.2d 648 (1988)).

The preferential treatment of the named plaintiffs is fair. *Franks v. Kroger Co.*, 649 F.2d 1216, 1225–26 (6th Cir.1981).

The court must also evaluate the adequacy of the decree "by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement." *Williams, supra* at 922, *citing Carson, et al. v. American Brands, Inc.*, 450 U.S. 79 at 88 n. 14, 101 S.Ct. 993, 1005 n. 14, 67 L.Ed.2d 59 (1981).

Counsel for both plaintiff class and defendant have called attention to the recent decisions of the United States Supreme Court which may impact this litigation if the proposed consent decree is not approved.

While the court should not determine the merits of the controversy or the precise facts underlying the legal position of the litigants presenting the consent decree, the court must evaluate the adequacy of the consent decree "by weighing the plaintiff's likelihood of success on the merits against

the amount and form of the relief offered in the settlement." *Carson, supra* at 88, 101 S.Ct. at 1005. It might well be that if this consent decree is not approved, plaintiff class might not be able to establish liability; or, alternatively, the relief available might be less than that provided in the proposed consent decree. *See Wards Cove Packing Company, Inc., et al. v. Frank Atonio, et al.,* — U.S. ——, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989).

The court is satisfied that the *res judicata* effects of the settlement on all members of plaintiff class are fair.

### Post–Fairness Hearing Developments

■ When the fairness hearing concluded, the court suggested to counsel for the parties and the objectors that they should engage in further discussion to decide whether the claims of the objectors could be resolved. These discussions were fruitless and the court was asked to proceed to decision.

On August 3, 1989, named plaintiff Larry Dodson and other objectors to the consent decree, through their counsel Godfrey J. Dillard, moved the court to substitute Dillard for the firm of Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick as plaintiff class counsel. A hearing was held on this motion on August 11, 1989.

Dillard made conclusory allegations concerning the inadequacy of Lopatin, Miller as representatives of plaintiffs' class. Principal objections were that counsel is out of touch with members of the class; that there had been no contact with class members in the previous thirty days; that, according to the Affidavit of named class representative Larry Dodson, "National Vice-President of the Pro–Minority Action Coalition, ... and a principal player in the decision to institute and prosecute the within action, ... the continued legal representation by the Firm of Lopatin, Miller, et al. is not in the best interest of the class"; that "the present attorneys are in collusion with Defendant's attorneys"; and that "the present attorneys have had little or no contact with class members". *Affidavit of Larry Dodson,* filed August 17, 1989.

Objectors' counsel Dillard requested that an evidentiary hearing be held. To determine the likely content of such an evidentiary hearing, the court requested an offer of proof. In response thereto, Dillard stated that he would prove that in the last thirty days there had been no contact between Lopatin, Miller and objectors; that there are class members who have attempted to raise issues regarding individual cases. However, in response to the court's question, Dillard could offer no witness names. He stated that he believed these people had attempted to communicate with Lopatin, Miller either by telephone or by writing "several letters." *Transcript of August 11, 1989 Evidentiary Hearing* at pp. 43–45.

He also stated that his proofs would show that "during the course of the discussions that we had over the few days after the consent decree [alluding to the fairness hearing] ... I was told specifically by Mr. [Dennis] James that there was going to be a settlement that was going to be cut between him and the defendants to the exclusion of me...." Tr. at 45.

The analysis of the United States Court of Appeals for the Second Circuit in *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 449, 464 (2d Cir.1974), *quoted with approval* in *Geier v. Alexander,* 801 F.2d 799, 809 (6th Cir.1986), applies to Dillard's objections:

> In general the position taken by the objectors is that by merely objecting, they are entitled to stop the settlement in its tracks, without demonstrating any factual basis for their objections and to force the parties to expend large amounts of time, money and effort to answer their rhetorical questions, notwithstanding the copious discovery available from years of prior litigation and extensive pre-trial proceedings. To allow the objectors to disrupt the settlement on the basis of nothing more than their unsupported suppositions would completely thwart the settlement process. On their theory no class action would ever be settled, so long as there was at least a single lawyer around who would like to

replace counsel for the class and start the case anew. To permit the objectors to manipulate the distribution of the burden of proof to achieve such an end would be to permit too much. Although the parties reaching the settlement have the obligation to support their conclusion to the satisfaction of the District Court, once they have done so, they are not under any recurring obligation to take up their burden again and again *ad infinitum* unless the objectors have made a clear and specific showing that vital material was ignored by the District Court. There is no need for the District Court to hold an additional evidentiary hearing on the propriety of the settlement. Its conclusion appears to have been reached only after a thorough investigation of all relevant facts.

*Id.*

This statement describes clearly what the objectors and their counsel are attempting to do. Most pertinent is this comment in *City of Detroit, supra:* "On their theory no class action would ever be settled, so long as there was at least a single lawyer around who would like to replace counsel for the class and start the case anew." Or, again: "[When] the parties reaching the settlement have [met their obligation to support their conclusions to the satisfaction of the district court], once they have done so, they are not under any recurring obligation to take up their burden again and again *ad infinitum* unless the objectors have made a clear and specific showing that vital material was ignored by the District Court. There is no need for the District Court to hold an additional evidentiary hearing on the propriety of the settlement." *Id.* at 464.

Accordingly, the motion by named plaintiff Larry Dodson and other objectors for substitution of counsel is DENIED.

An order approving the consent decree may be submitted.

IT IS SO ORDERED.