**Dennis H. HUGULEY, Plaintiff,**

**Abbie L. Perry and Lonnie K. Perry, Plaintiffs–Appellants,**

v.

**GENERAL MOTORS CORPORATION, Defendant–Appellee.**

No. 92–1858.

United States Court of Appeals, Sixth Circuit.

Argued April 7, 1993.

Decided July 15, 1993.

Courtney E. Morgan, Michelle J. Harrison (argued and briefed), Chambers, Steiner, Mazur, Ornstein & Amlin, Detroit, MI, for plaintiffs-appellants.

Robert L. Ashe, Jr., Paul, Hastings, Janofsky & Walker, Atlanta, GA, Brian K. Zahra, Dennis W. Archer, Dickinson, Wright, Moon, Van Dusen & Freeman, Detroit, MI, Wendell R. Tucker, Baker & Daniels, Indianapolis, IN, Barbara A. Brown (argued and briefed), Paul, Hastings, Janofsky & Walker, Washington, DC, Mark Granzotto, Detroit, MI, Mark R. Flora, Mouce & Galatzan, El Paso, TX, for defendant-appellee.

Before: GUY and NELSON, Circuit Judges; and WELLFORD, Senior Circuit Judge.

WELLFORD, Senior Circuit Judge.

The plaintiff, Abbie Perry (Perry), is a salaried black employee of defendant, General Motors Corporation (GM). In August, 1991, Perry and her husband, Lonnie, filed a complaint in Michigan state court alleging that, based on her race, GM had denied Perry promotions and merit pay and had demoted plaintiff by transferring her to a department which lacked promotion opportunities. Perry further alleged that GM had

retaliated against her because she used GM's open door policy to challenge the various employment decisions. The husband's claim was for loss of consortium based on the alleged racial discrimination.

GM removed Perry's complaint to federal court where it argued that the consent decree in *Huguley v. General Motors Corp.*, 128 F.R.D. 81 (E.D.Mich.1989), *aff'd mem.*, 925 F.2d 1464 (6th Cir.1991), *cert. denied sub nom. Dodson v. General Motors Corp.*, —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991), barred these claims. Judge John Feikens, the same judge who heard the *Huguley* case, agreed with GM's contentions and enjoined Perry from pursuing her discrimination claims in state court pursuant to the Anti–Injunction Act, 28 U.S.C. § 2283. In issuing the injunction, the district judge interpreted the scope of the consent decree in *Huguley*, which resolved that protracted litigation. In essence, this case revolves around the scope of the consent decree approved by the district court in *Huguley*.

*Huguley* began in 1983 when Laras Eason filed a complaint, individually and on behalf of all similarly situated black salaried employees, against GM. The original complaint, as well as its final refined version (the third amended complaint), alleged violations of (1) Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq.*), (2) the Civil Rights Act of 1866 (42 U.S.C. § 1981), and (3) the Elliott–Larsen Civil Rights Act (Mich. Comp.Laws § 37.2101, *et seq.*). On October 16, 1986, the district court certified a class of "all black salaried employees of General Motors in Michigan, Indiana and Ohio who were subject, between October 8, 1982 and September 25, 1986, to the General Motors appraisal systems for salaried employees."

In 1976, GM installed an "appraisal system" to facilitate awarding merit based promotions, transfers and salary increases. Integral to this appraisal system were appraisal ratings consisting of subjective performance evaluations by immediate supervisors. Due to the operation of GM's seniority system over the years, a disproportionate percentage of white employees occupied the supervisory positions responsible for evaluating the performance of GM's front line employees. The thrust of the class action complaint was that racial bias, inherent in the proportion of white supervisors, resulted in latent racial discrimination in both appraisal ratings and in promotions after the appraisals were rendered.

After the *Huguley* class was certified, *extensive* discovery and settlement negotiations took place. The core of the dispute became the effect of racial bias on the appraisal ratings, and its alleged trickle down impact upon salary increases and promotions for black employees. Consequently, settlement negotiations focused on discretionary salary increases and promotions—the two employment practices statistically related to the appraisal system. In early 1989, the parties submitted a proposed consent decree, which the district court preliminarily approved on February 3. Objections were later heard and approval of the consent decree became final on September 1, 1989.

In the *Huguley* consent decree, a computer driven statistical check on the number of blacks receiving promotions and pay increases was directed. It provided affirmative action style remedies (principally automatic pay increases and promotions for blacks) if the percentage of promotions for blacks dropped below a particular statistical standard.[1] The district court recognized that "[t]he appraisal system itself is left relatively untouched" by the consent decree. (Opinion of district court approving consent decree).

In addition to establishing the complex computer monitoring system designed to eradicate the effect of racial discrimination, GM also agree to establish a pool from which it would pay over three million dollars in monetary damages to members of the affected class. The opinion approving the decree contained the following provision:

> The consent decree resolves all claims of race discrimination asserted in, or in any way placed in issue by, the third amended

---

1. The system revolves around a network of standard deviation calculations. Calculations are made each year, and there are various provisions made for cumulative statistical analysis over a period of years.

complaint. This includes all claims related to any alleged racially discriminatory purpose, adverse impact of effect of the General Motors appraisal system for black salaried employees in the tri-state area *or in any way related to race discrimination* in promotions, pay, demotion, transfer, layoff, recall or other personnel decisions, including alleged retaliation for participation in this suit and from any claim for attorney fees and costs.

*Huguley,* 128 F.R.D. at 83 (emphasis added). Judge Feikens also ruled that an "opt-out" provisions was inappropriate under the circumstances.

Approximately fifteen percent of the class members objected to the consent decree during the June, 1989 hearings. A number of these objectors appealed the court's approval of the consent decree. In an unpublished opinion, we affirmed the district court in all respects, rejecting all the challenges thereto. *Huguley v. General Motors Corp.,* 925 F.2d 1464 (6th Cir.1991) (Per Curiam). We also noted that it might have been an abuse of discretion *not* to deny the plaintiff's request for an opt out provision. *Id.* The Supreme Court rejected a petition for certiorari on October 15, 1991. *Dodson v. General Motors Corp.,* —— U.S. ——, 112 S.Ct. 304, 116 L.Ed.2d 247 (1991).

■ We now consider Perry's contention that the district court erred by finding that her claims fell within the preclusive scope of the *Huguley* consent decree.

> A court of the United States may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, *or to protect or effectuate its judgments.*

28 U.S.C. § 2283 (emphasis added). The italicized clause is commonly referred to as the "relitigation exception" to the Anti-Injunction Act, and it is this language that Judge Feikens used to enjoin the Perrys

from pursuing their state claims against GM. Based on its jurisdiction over the underlying controversy (the *Huguley* case), the district court retained jurisdiction to enjoin all state actions if necessary "to protect or effectuate" its judgment in an underlying controversy. *Royal Ins. Co. of Am. v. Quinn–L Capital Corp.,* 759 F.Supp. 1216, 1228 (N.D.Tex. 1990), *aff'd in part,* 960 F.2d 1286 (5th Cir. 1992) ("no independent basis of jurisdiction is required for a federal court to entertain an application to enjoin relitigation in state court"). Thus, while the Anti–Injunction Act generally precludes federal courts from interfering with state court proceedings, there is an exception to "protect" or "effectuate" prior federal court judgments.

■ The district judge determined that an injunction was necessary to protect its judgment because "[t]he issues raised in ... Perrys' complaint are the exact same issues that were dealt with and resolved by the *Huguley* consent decree." We review *de novo* the district judge's legal determination that the consent decree had *res judicata* effect over Perry's claim and that the relitigation exception applies. *Chick Kam Choo v. Exxon Corp.,* 486 U.S. 140, 146–47, 108 S.Ct. 1684, 1689–90, 100 L.Ed.2d 127 (1988); *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers,* 398 U.S. 281, 286–87, 90 S.Ct. 1739, 1742–43, 26 L.Ed.2d 234 (1970). We review, based on abuse of discretion, the further discretionary decision to enjoin the Perrys' prosecution of their claims in state court. We conclude that the *Perry* suit fell within one of the statutory exceptions allowing an injunction where one would otherwise be prohibited. Having decided that an injunction legally *could* issue, we further conclude that Judge Feikens did not abuse his discretion by doing so.[2]

■ The relitigation exception is grounded in principles of *res judicata* and collateral estoppel. *Chick Kam Choo,* 486 U.S. at 147, 108 S.Ct. at 1690. The Supreme Court has

---

**2.** GM contends that the proper standard is abuse of discretion, citing *American Town Center v. Hall 83 Associates,* 912 F.2d 104, 111 (6th Cir. 1990), for that proposition. *American Town Center* provides that a district judge has discretion to order or to deny an injunction after he determines that he would be legally justified under 28

U.S.C. § 2283 in granting an injunction. Thus, Judge Feikens could have decided not to issue an injunction even if he thought one was legally justifiable, but instead, he exercised his discretion to enjoin the Perrys' efforts against GM in state court.

counseled caution in employing the relitigation exception to enjoin state proceedings, and it has given the relitigation exception a narrow construction. *Id.* at 148, 108 S.Ct. at 1690. Balancing the narrow construction afforded exceptions to the Anti–Injunction Act, and the *de novo* standard of review, is the well established principle that a district court's interpretation of its consent decrees is entitled to substantial deference on appeal. Such deference is required because, "[f]ew persons are in a better position to understand the meaning of a consent decree than the district judge who oversaw and approved it." *Brown v. Neeb,* 644 F.2d 551, 558 n. 12 (6th Cir.1981); *see also Bechtel Petroleum, Inc. v. Webster,* 796 F.2d 252, 253 n. 2 (9th Cir.1986), *cert. dismissed,* 481 U.S. 1065, 107 S.Ct. 2455, 95 L.Ed.2d 864 (1987) ("[the district judge] was in the best position to assess the strength of this relitigation allegation as he was the same judge who presided over the federal ... enforcement proceeding...."); *Delta Airlines, Inc. v. McCoy Restaurants, Inc.,* 708 F.2d 582, 586 (11th Cir.1983).

The "essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings *actually have been decided* by the federal court." *Chick Kam Choo,* 486 U.S. at 148, 108 S.Ct. at 1690 (emphasis added). The plaintiffs have not alleged that Judge Feikens abused his discretion in granting the injunction even if he had the legal justification to do so. Rather, they argue only that he lacked the legal basis to grant the injunction. Hence, the resolution of this case turns entirely on whether the district court was correct in determining that the *Huguley* consent decree barred this action.

 Principles of *res judicata* apply with special effect in the class action context. *King v. South Cent. Bell Tel. & Tel. Co.,* 790 F.2d 524, 528 (6th Cir.1986). Those principles apply not only to judgments, but also to consent decrees. *Vulcan, Inc. v. Fordees Corp.,* 658 F.2d 1106 (6th Cir.1981), *cert. denied,* 456 U.S. 906, 102 S.Ct. 1752, 72 L.Ed.2d 162 (1982). A consent decree has preclusive effect over issues that were fully and fairly addressed in the proceedings be-

low. *Silcox v. United Trucking Serv., Inc.,* 687 F.2d 848, 850 (6th Cir.1982). We have ruled that "a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings." *American Town Center v. Hall 83 Assoc.,* 912 F.2d 104, 111 (6th Cir.1990) (quoting *De Cosme v. Sea Containers, Ltd.,* 874 F.2d 66, 68 (1st Cir.1989)).

We must assess whether the consent decree precludes the state action, and thus we compare the consent decree with the Perrys' state court complaint. *American Town Center,* 912 F.2d at 111. Perry has alleged that GM is guilty of racial discrimination in the following specific ways:

(1) Failing to provide plaintiff with an impartial performance appraisal(s);

(2) Failing to provide plaintiff with competitive compensation;

(3) Excluding plaintiff from receiving a merit award in 1987;

(4) Denying plaintiff promotional opportunities;

(5) Failing to promote plaintiff to a 7th level employee position, despite the claim that co-employees similarly situated had 7th level status;

(6) Transferring or promoting other less qualified or experienced persons, not members of a protected class;

(7) Giving plaintiff substantially smaller special recognition awards;

(8) Harassing and retaliating against plaintiff for utilizing the defendant's "Open Door" process to address her concerns.

Reduced to their minimum, Perry's claims essentially are dual: (A) notwithstanding her good appraisal rating, Perry was denied promotions because of racial discrimination; and (B) Perry was victimized and retaliated against by racial discrimination when she attempted to use GM's "Open Door" policy. These claims, Perry contends, are cognizable as violations of the Elliott–Larsen Civil Rights Act. Mich.Comp.Laws § 37.2101 et seq. Perry's husband alleges loss of consortium based on GM's alleged racial discrimination. While most of these alleged acts oc-

curred before the consent decree became effective, Perry claims that some of the alleged discrimination occurred after the effective date of the consent decree.

The proper scope of the *Huguley* consent decree is crucial to the determination of this dispute. In pertinent part, the final consent decree provides for the following "SCOPE AND EFFECT:"

> The provisions of this Decree resolve all claims which were asserted by named plaintiffs, or the members of the class which they represent, in the Third Amended Complaint filed in ... [*Huguley*]. This includes all matters of relief as to all Company facilities ... that relate to compliance with Title VII, § 1981, the Elliott–Larsen Civil Rights Act, M.C.L.A. § 37.2101 *et seq.*, Executive Order 11246, as amended, *or any other federal, state or local statute, order or ordinance governing equal employment opportunity,* based on acts, omissions, policies, procedures, decisions, and practices of the Company *relating to alleged race discrimination in the appraisal systems at issue in this case, or in any way related to alleged race discrimination in the promotion, pay, demotion, transfer, layoff, recall or other personnel decisions at issue in this case, or any alleged retaliation* for participating in this case, occurring prior to the date of this Decree *and any future effect of such prior occurrences....* To the extent permitted by law, the final entry of this Decree shall be fully binding and effective for purposes of res judicata and collateral estoppel upon the Company and all persons raising claims in this case, either individually or as a class, with respect to Title VII, § 1981, the Elliott–Larsen Civil Rights Act, or any other federal, state or local statute, executive order, ordinance, rule or regulation relating to or concerning equal employment opportunity or affirmative action or any race discrimination claim allegedly re-

sulting from the General Motors appraisal systems or the personnel decisions at issues in this case.

(emphasis added).

Notwithstanding this broad language, Perry argues that the consent decree does not apply to her. She notes that the primary focus of the dispute in *Huguley* was on the racial discrimination inherent in the subjective appraisal ratings process. Perry also points out that the third amended complaint, which is the principal measuring stick for preclusive effect, refers primarily to discrimination in the appraisal rating system. Additionally, the class was defined in terms of employees, like Abbie Perry, who were subject to the appraisal system. Finally, plaintiffs point to comments by the district judge in non-binding discussions with various counsel during the objections hearing in June, 1989, inconsistent with his interpretation of the scope of the consent decree in this case.[3] Perry argues that her claim cannot be barred because she alleges discrimination notwithstanding the fact that she received positive appraisal ratings, unlike some of the class plaintiffs. She reasons that a consent decree addressing discrimination causing poor appraisal ratings cannot preclude her claim because she was injured not by the appraisal process itself, but by other actions subsequent to her evaluations.

▪ Like Judge Feikens, we are persuaded that the final consent decree was intended by all parties to address more than just the effects of discrimination in the appraisal process. The plain language of the consent decree preempts any claims brought under the Elliott–Larsen Act. Plaintiffs' race discrimination claims arise under that Act. The opinion adopting the consent agreement contemplates preclusion of discrimination issues beyond those in the appraisal ratings system. By its express terms, the consent decree

---

3. During the hearing, plaintiffs claim that one attorney was trying to determine if her client would be bound by the consent decree. The following exchange occurred:

> Attorney: ... her claims are number one: a violation of the Elliott–Larsen Civil Rights Act on the basis of her race, sex and age, that she was not able ...

> Court: The consent judgment would not effect that claim.
>
> Attorney: Does not effect [sic] her claim for race discrimination?
>
> Court: Under Elliott–Larsen, no.

We do not deem these remarks to overcome or set aside the terms of the consent decree itself.

applies to *all claims* raised by the third amended complaint. In his opinion, Judge Feikens wrote that the third amended complaint alleged that the entire appraisal system (encompassing more than just the ratings system), resulted in racial discrimination "in appraisal ratings *and with respect to promotions, demotions, layoffs, recalls, pay and transfers.*" (emphasis added).

The district court also dismissed claims similar to those at issue in another recent case. In *Thomas v. General Motors Corp.*, No. 91–CV–76068–DT, 1992 WL 521527 (E.D.Mich. Jan. 31, 1992), Judge Feikens had before him claims that GM violated the Elliott–Larsen Act by failing to promote plaintiff because of his race, and that GM had engaged in racial harassment and had made racially motivated threats of bodily harm. Judge Feikens enjoined prosecution of the Elliott–Larsen claims, but allowed the racial harassment claims to proceed:

> Looking specifically to plaintiff's complaint, plaintiff is clearly prevented from pursuing his state law Elliott–Larsen claim based on defendant's alleged discriminatory failure to promote him. He is also barred from pursuing his state law claims that defendant discriminated against him in the terms and conditions of employment because of his race, except to the extent that such claims involve racially motivated threats of bodily harm and the uttering of racially derogatory statements and epithets.

*Thomas*, No. 91–CV–76068–DT, slip op. at 2.

Next, as previously noted, Judge Feikens' interpretation of the scope of the consent decree is entitled to considerable deference on review. *Brown v. Neeb*, 644 F.2d 551 (6th Cir.1981). He ordered an injunction because "[a]fter careful review of the *Huguley* record and consideration of all papers filed,.... The issues raised in the first two counts of the Perrys' complaint are the exact same issues that were dealt with and resolved by the *Huguley* consent decree."

Finally, the negotiations pertaining to the agreed scope of the consent decree suggest that the decree was intended to preclude more claims than just those relying on allegedly unfair appraisal ratings. GM contends that a significant inducement for agreeing to the settlement was that the decree would extinguish the race related claims of class members, named plaintiffs, and potential anecdotal witnesses. The situation of two anecdotal witnesses whose claims were extinguished by the decree were similar to Perry's position. One witness testified that "Mr. Arnold received good performance appraisals. However, Mr. Arnold observed whites with less training and less experience obtaining the promotions be sought." Another testified that, "[d]espite highly effective ratings ..., numerous letters of commendation and a B.S. degree, [Mr. Dodson] has ... observed several white coworkers without college degrees being promoted over him and/or earning more for performing the same services."

It appears to us that the parties intended that the consent decree insulate GM from claims such as the ones alleged by Perry in the instant case. We, accordingly, hold that the injunction in *Huguley* issued to bar all claims of discrimination arising out of conduct taking place before the date of the consent decree. The express language used and the district court's interpretation of the consent decree language, after full discussion and negotiation, lead us to that conclusion.

Plaintiff makes vague claims that she was discriminated against after September 1, 1989—the date Judge Feikens approved the consent decree (pertaining to claims "occurring prior to the date of this Decree and any future effect of such occurrences.") The parties dispute the effective date under the circumstances.[4]

■ Perry alleges three types of post-decree discrimination. First, she contends that under the Elliott–Larsen Act, each day that a person occupies a lower position than he/she would have occupied, absent prior discrimination, that person suffers a new act of discrimination. But the consent decree clearly bars claims stemming from future effects of past discriminatory conduct. Con-

---

4. Perry contends that the measuring date is September 1, 1989, because Judge Feikens approved the decree on that date. The proper measuring date is October 15, 1991, when the Supreme Court denied certiorari.

struing, for example, the alleged effect of a discriminatory action taken in 1986 as another daily and continuing discriminatory act in 1992, would directly contravene the clear intent of the consent decree. Perry's claim in this regard has no merit.

Perry also alleges that her "demotion" to a different department in 1988 amounts to a new act of discrimination for every day she is not reinstated to her original position and department. Once again, we hold that this allegation falls under the express "future effects of prior discrimination" language, and is therefore covered by the consent decree.

Finally, Perry alleges that she is currently being discriminated against because whites are constantly being transferred out of her division, while blacks are relegated to "languishing" in this reportedly disfavored area of GM. Perry has not alleged facts sufficient to establish a claim based on these allegations. She may have alleged sufficient facts in a later state court claim, but that is subject to a separate appeal. Our decision covers only Judge Feikens' order of June 9, 1992.

■ Judge Feikens enjoined Mr. Perry's loss of consortium claim because it "depended for its life on the Elliott–Larsen counts." More accurately, Lonnie Perry's claim depends for its life on the alleged GM conduct underlying Perry's Elliott–Larsen complaint. His loss of consortium claim is a matter of relief relating to her alleged race discrimination by GM. His claims are also expressly precluded by the consent decree. (We do not rule on claims of his spouse, if any, which came into existence after the final effective date of the decree.) *See Terrell v. DeConna,* 877 F.2d 1267, 1272 (5th Cir.1989).[5]. This may be the subject of a later separate appeal.

We, accordingly, **AFFIRM** the decision and injunction of the district court. We find no abuse of discretion under the circumstances.

---

Perry's claims should not be precluded.