**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0307n.06

No. 09-5907

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
**May 19, 2010**
LEONARD GREEN, Clerk

SECURITIES AND EXCHANGE COMMISSION, )
                                      )

      *Plaintiff,*                      )

                                        )

BRIAN M. BURR,                        )     On Appeal from the United States
                                        )     District Court for the Middle

      *Defendant-Appellant*,        )     District of Tennessee
                                        )

v.                                         )

                                        )

DOLLAR GENERAL CORPORATION,      )

                                        )

      *Defendant-Appellee.*         )

Before: **COOK and McKEAGUE, Circuit Judges; HOOD, Senior District Judge.**[*]

**HOOD, Senior District Judge**. This appeal arises from the district court's grant of an injunction prohibiting Appellant Brian Burr ("Burr") from pursuing his state court lawsuit against Appellee (and co-defendant) Dollar General Corporation ("Dollar General"). Dollar General sought, and obtained, an injunction in the federal court lawsuit which gives rise to the instant appeal. The district court granted the injunction based on the enforcement of the Consent Judgment it entered in the case, which was derived from a consent decree between Burr and the Securities and Exchange

---

[*]The Honorable Joseph M. Hood, Senior United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 09-5907
*Burr v. Dollar General Corp.*

Commission ("SEC").[1]   Burr appeals on several grounds, including, that the district court erred in

finding that Dollar General had standing to enforce Burr's Consent Judgment.  Based on applicable

case law, which clearly states that non-parties to a consent decree do not have standing to enforce

the decree, the district court's decision will be **REVERSED** and the injunction it issued

**VACATED**.

## I.     Factual and Procedural Background

This appeal arises from the intersection of two lawsuits.  The first lawsuit, the one from

which this appeal is taken, originated from allegations of insider trading by the SEC against Burr and

his co-defendants.  In April 2005, the SEC filed a lawsuit against Dollar General, Burr, and other

defendants for alleged violations of the Securities Act and the Exchange Act.  Each of the defendants

entered into a separate consent decree with the SEC.  The terms of Burr's consent decree included

the payment of a civil penalty, disgorgement payments, and interest payments, as well as a

---

[1]The cited cases herein, the district court below, and the parties to this appeal all utilize different names for a "Consent Judgment," "Final Judgment," or "Agreed Judgment."  Black's Law Dictionary states that an "agreed judgment" is also termed a "consent judgment."  Black's Law Dictionary 858-59 (8th ed. 2004).  For the purpose of clarity, this opinion will refer to Record No. 36, docketed as the "Final Judgment as to Defendant Brian Burr," as "Burr's Consent Judgment," or "the Consent Judgment," because that is the term the district court used to describe the document in its Memorandum at R. 82, filed in support of its Order (Order, R. 83, July 2, 2009.) which is the subject of this appeal.  In citing or discussing applicable case law, however, the terms "Agreed Judgment," and "Consent Judgment" will be used interchangeably, as they were in the original decisions to which this opinion cites.  The "Consent of Defendant Brian Burr" (Consent Decree, R. 33-2, Apr. 10, 2006.) will be referred to as it is in the district court's Memorandum at R. 82, the "consent decree."  In its Memorandum at R. 82, the district court refers to the consent decree and Burr's Consent Judgment interchangeably and as the same document, but it should be noted that these are not the same document and are not treated as such for the purposes of the analysis herein.

prohibition from seeking to recover against any co-defendant in a subsequent lawsuit. The district court entered Burr's Consent Judgment in April 2006, which incorporated the terms of the consent decree.

In February 2006, Burr filed suit in Tennessee Circuit Court against Dollar General based on the facts that led to the SEC's suit against Burr and Dollar General. In that action, Burr alleged that Dollar General defrauded him in leading him to believe that he could cash in his stock options "in compliance" with all applicable regulations. Burr sought to recover damages related to his settlement with the SEC, including the value of the loss of the stock options, loss of income, attorney's fees, punitive damages, and interest. Dollar General contended that Burr's pursuit of a state court action was in contravention of the terms of Burr's Consent Judgment, which prohibited Burr from seeking indemnification from any co-defendant. Dollar General filed a motion in the district court to enforce Burr's Consent Judgment and enjoin the state court lawsuit. Burr argued, among other things, that Dollar General was not a party to the consent decree setting forth the terms of the agreement of between Burr and the SEC, and incorporated into Burr's Consent Judgment, and, thus, did not have standing to enforce Burr's Consent Judgment. The district court disagreed, held that Dollar General had standing to enforce Burr's Consent Judgment, granted the motion to enforce, and ordered Burr to dismiss his state court action.

The district court summarily concluded that "Burr expressly 'relinquishe[d] all legal and equitable right, title, and interest" in the civil penalty, disgorgement, and interest payments that he made under the Consent Judgment," and that "'no part of the funds shall be returned,' thereby prohibiting Burr from seeking to enforce his alleged right to the return of those funds."

(Memorandum, R. 82 at 3, July 2, 2009.) Thus, according to the district court, Burr waived any claim of recovery against Dollar General for the funds paid to the SEC pursuant to the Consent Judgment. The district court therefore granted Dollar General's motion to enforce the Consent Judgment.

Dollar General argues on appeal that Burr is barred from seeking to recover from it the stock option proceeds, loss of income resulting from the five-year employment ban, and a portion of the funds disgorged to the SEC, which are damages implicated by Burr's state law claims. In its appellate brief, Dollar General asserts that Burr "further agreed that 'no part of the funds shall be returned' to him. By these terms, Burr is prohibited from seeking to enforce his alleged right to the return of the forfeited amounts. This is especially true for the disgorged amounts." (Appellee's Br. 20.) According to Dollar General, Burr waived his claim to a portion of the disgorgement payment on appeal because this claim is inconsistent with his pleading in the district court, in which he did not seek any of the disgorgement payment. With regard to Burr's claim for lost income, Dollar General argues that the agreed-to employment bar, in conjunction with Burr's "relinquishment of all legal and equitable right, title, and interest in his forfeitures, precludes his claims for lost income against Dollar General." (Appellee's Br. 21.) Finally, Dollar General contends that the district court had the authority to issue the injunction because all of Burr's state court claims were resolved by the Consent Judgment, and therefore, the injunction effectuated the Consent Judgment.

Burr argues on appeal that Dollar General did not have standing to enforce the Consent Judgment because it was not a party to the Consent Judgment. Burr further argues that, with the exception of one category of damages, his state court lawsuit against anyone other than the SEC is

4

permitted under the terms of the Consent Judgment. Burr also argues that the Consent Judgment

did not provide for an injunction as a remedy, it was in violation of the Anti-Injunction Act, and even

if issuing an injunction was proper, the specific terms of the injunction issued were overly broad.

## II.     Standard of Review

This Court reviews a district court's determination of the issue of standing "under the

traditional de novo standard of review . . . because the issue of whether a claimant has constitutional

standing is a question of law." *U.S. v. Real Property, All Furnishings Known as Bridwell's Grocery*,

195 F.3d 819, 821 (6th Cir. 1999). The district court's interpretation of its Consent Judgment is

reviewed under an abuse of discretion standard, while the decision as to whether the injunction in

this case could legally issue under the Anti-Injunction Act is reviewed under a *de novo* standard.

*Huguley v. General Motors Corp.*, 999 F.2d 142, 145-46 (6th Cir. 1993).

## III.    Analysis

### A.      Dollar General Lacks Standing to Enforce the Judgment

The district court found that

> [a] consent judgment is in essence a contract. Although Dollar General is not a
> named party to Burr's Consent Judgment, Dollar General was a named Defendant in
> this action. Burr's Consent Judgment expressly prohibits him from seeking to
> recover against any co-defendant. Although non-parties lack standing to enforce a
> consent decree, Dollar General is a co-defendant in this action and thus has standing.
> Burr's Consent Judgment clearly conferred a benefit on his co-defendants in this
> action.

(Mem., R. 82 at 2-3, July 2, 2009.) (citations omitted). The district court's analysis, however, is in

direct conflict with controlling Supreme Court and Sixth Circuit case law.

Burr does not contest that Dollar General was intended to be benefited by the consent decree. The Supreme Court has held, however, that "a well-settled line of authority . . . establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750 (1975). The Sixth Circuit echoed this holding in *Vogel v. City of Cincinnati*, stating that the plaintiff, "who was not a party to the consent decree, lack[ed] standing to challenge the City's interpretation of the decree." *Vogel v. City of Cincinnati*, 959 F.2d 594, 597 (1992); *accord Aiken v. City of Memphis*, 37 F.3d 1155, 1167 (1994).

Dollar General argues that even though it was not a party to the consent decree, it was a party to the litigation in which Burr's Consent Judgment was entered, and therefore it "has standing to seek a co-defendant's compliance with a Judgment entered in that litigation." (Appellee's Br. 14.) The only case Dollar General cites in support of its position is *U.S. v. Visa, U.S.A., Inc.*, No. 98 Civ. 7076, 2007 WL 1741885 at *1 (S.D.N.Y. June 15, 2007), an unreported decision from the Southern District of New York. (*Id.*) *Visa*, unlike *Blue Chip Stamps, Vogel* and *Aiken*, is not controlling authority in this Circuit. Furthermore, the Court in *Visa* does not directly address the issue of third-party standing to enforce a Judgment and therefore should not be relied upon as even persuasive authority for this point of law.

Dollar General also argues that Burr's position that Dollar General cannot enforce Burr's Consent Judgment because it was not a party to the consent decree is "absurd" because the only party to Burr's Consent Judgment was the district court. This argument has no merit. The Court was not a party in this litigation. In support of this preposterous assertion, Dollar General cites *Sanders v.*

*Republic Services of Ky.*, 113 F. App'x 648, 649-50 (6th Cir. 2004). In *Sanders*, however, the Sixth Circuit held that because the plaintiffs seeking to enforce the Agreed Judgment were not parties to it, they could not bring suit to enforce the judgment under *Blue Chip Stamps* and *Aiken*. *Sanders v. Republic Services of Ky.*, 113 F. App'x 648, 650 (6th Cir. 2004).

In fact, the *Sanders* decision was predicated on facts very similar to those at bar. In *Sanders*, the plaintiffs and parties seeking to enforce the Agreed Judgment were intervening defendants in the underlying lawsuit, but not parties to the Agreed Judgment between the original plaintiff and defendant. *Id.* at 649. Although Dollar General places considerable importance on the difference between being a party to the consent decree and being a party in the litigation in which the Judgment was entered, the *Sanders* Court did not recognize such a distinction. The Court there held:

> The Agreed Judgment is an agreement only between the [defendant in the underlying lawsuit] and [the plaintiff in the underlying lawsuit] . . . The district court found that this action was merely an attempt by plaintiffs [in the enforcement suit] to enforce a judgment to which they are not parties, and correctly held that the plaintiffs lack standing to enforce their understanding of its terms.
>
> . . . Following *Blue Chip Stamps*, we have held that third parties, even intended third-party beneficiaries, lack standing to enforce their interpretations of agreed judgments. "A consent decree 'is not enforceable . . . by those who are not parties to it . . . .' It 'may be challenged only on the ground that its substantive provisions unlawfully infringe upon the rights of the complainant.'" *Vogel v. City of Cincinnati*, 959 F.2d 594, 598 (6th Cir. 1992) (citations omitted).
>
> [Plaintiffs] emphasize that they were parties to the original action, and they argue that they were "within the specific 'zone of interests' protected under the Agreed Judgment." The fact remains, however, that none of the plaintiffs in this action was a party to the Agreed Judgment. Nor is it relevant that they may fall within the zone of interests protected by the Judgment. "The plain language of *Blue Chip* indicates that even intended third-party beneficiaries of a consent decree lack standing to enforce its terms." *Aiken v. City of Memphis*, 37 F.3d 1155, 1168 (6th Cir. 1994).

*Sanders*, 113 F. App'x 648, 650, (6th Cir. 2004). The *Sanders* Court clearly used case law addressing third-party enforcement of a consent decree and applied it to a situation in which a third-party sought to enforce a judgment.

Thus, Supreme Court and Sixth Circuit precedent are clear that nonparties to a consent decree or, analogously, an agreed or consent judgment entered by the Court incorporating a settlement agreement or a consent decree, do not have standing to enforce a judgment. Dollar General has failed to cite any case law holding otherwise and has generally failed to make any compelling arguments to the contrary. The district court, therefore, erred in finding that Dollar General had standing to enforce Burr's Consent Judgment.

**B.      The District Court had the Inherent Authority to Enforce its Judgment**

For the reasons stated above, Dollar General does not have standing to enforce Burr's Consent Judgment. The next question is whether Dollar General's lack of standing is reason enough alone to vacate the district court's injunction precluding Burr from pursuing his state court claims against Dollar General. Although the district court did not expressly state that it was issuing the injunction based on its inherent authority to enforce its own Judgment, we assume the district court was exercising its inherent power, regardless of the defects in Dollar General's standing. *See Peacock v. Thomas*, 516 U.S. 349, 356 (1996). *See also, Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt.") *Hadix v. Caruso*, 297 F. App'x 504 (6th Cir. 2008) (noting the court's inherent power to enforce the consent decree at issue). Further, the Consent Judgment at issue explicitly provides that the district court "retain[s] jurisdiction of the matter for

the purposes of enforcing the terms of this Final [Consent] Judgment." (Final Judgment, R. 36 at 8.) Therefore, because the district court has the inherent power to enforce its own judgment in this case, this Court must consider whether the injunction issued was proper and within the district court's authority under the terms of the Consent Judgment.

Burr does not deny that a federal court has inherent authority to enforce its own judgments, but rather, asserts that the injunction issued by the district court was contrary to the terms of the Consent Judgment, and, furthermore, that the court exceeded its authority by entering an injunction in the first instance. As to Burr's argument that the court did not have the authority to issue the injunction, pursuant to the Anti-Injunction Act, that Act "generally precludes federal courts from interfering with state court proceedings, [but] there is an exception to "protect" or "effectuate" prior federal judgments. *Huguley v. General Motors Corp.*, 999 F.2d 142, 145 (6th Cir. 1993). To the extent the district court was enjoining the state court proceeding to "protect" or "effectuate" its Consent Judgment, we assume the district court was acting within its proper authority to do so.

Next, we must address the assertion that the district court's injunction was contrary to the terms of the Consent Judgment, Burr's state law complaint includes four counts, asserting claims for misrepresentation, fraud, breach of contract, and punitive damages. For the first three counts, Burr seeks compensatory damages for the value of the loss of the stock options; loss of income for a minimum of five years; loss of future income; and attorney's fees. These claimed damages stem from alleged injuries that are closely related to the factual basis for the SEC's action alleging insider trading against Burr and Dollar General. Burr does not deny the SEC's allegation that he engaged in illegal trades, but he claims that Dollar General defrauded him into making such trades by

9

misrepresenting to him that his actions were legal. Concerning the fraud claim, Burr alleges that but for the misrepresentations and omissions of Dollar General, leading him to believe that cashing in his stock options was in compliance with all applicable securities regulations, he would not have exercised his stock options. Therefore, he suffered damages including loss of reputation, paying a civil settlement to the SEC, and agreeing not to be an officer in a publicly traded company for five years. As to Burr's claim for misrepresentation, he asserts that the officers and directors of Dollar General breached their fiduciary duties to Burr as a shareholder when they failed to provide certain material information to Burr regarding the exercise of his stock options. Thus, according to the complaint, Burr is entitled to the value of the loss of these stock options. In Burr's breach of contract claim, he alleges that Dollar General breached its implied duty of good faith and fair dealing regarding Burr's separation from the company, and as a result, Burr is entitled to damages. Finally, Burr seeks punitive damages on the ground that Dollar General's actions were "intentional, wilful, and reckless." Thus, according to Burr, Dollar General owes him damages for harms arising out of his settlement with the SEC, due to Dollar General's wrongful actions which precipitated the SEC action against him. By the terms of the Consent Judgment and the Consent Agreement, Burr may be prohibited from recovering damages for *some* harms that were included in his settlement payment to the SEC. He is not, however, prohibited from seeking damages for other harms related to the settlement.

We acknowledge the district court's inherent authority to enforce the Consent Judgment. Further, assuming the district court's order could be deemed an exercise of that inherent authority, as we explained above, the injunctive order *may* have been justified in part but, in enjoining

prosecution of the state court action as a whole, is broader than authorized by the terms of the

Consent Judgment.

## IV.    Conclusion

For the foregoing reasons, the district court's decision to issue an injunction is **REVERSED**

and the injunction it issued **VACATED**.